## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket Nos. 50333 & 50715

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, January 2025 Term |
| | ) | |
| v. | ) | Opinion Filed: April 1, 2025 |
| | ) | |
| AMMON EDWARD BUNDY, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Gerald F. Schroeder, Senior District Judge, and David D. Manweiler, Magistrate Judge, and Kira L. Dale, Magistrate Judge.

The decisions of the district court are affirmed.

Idaho Injury Law Group, PLLC, Boise, for Appellant, Ammon Edward Bundy. Seth H. Diviney argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. Kenneth K. Jorgensen argued.

———————————————

MEYER, Justice.

Ammon Edward Bundy appeals from his convictions for misdemeanor criminal trespass and misdemeanor resisting and obstructing in two cases that have been consolidated on appeal. For the reasons discussed below, we affirm the district court's decisions upholding Bundy's convictions in both cases.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Bundy was convicted of one count of misdemeanor criminal trespass and one count of misdemeanor resisting and obstructing in Supreme Court Docket Number 50333. He was also convicted of one count of misdemeanor criminal trespass and one count of misdemeanor delaying an officer[1] in Docket Number 50715. Bundy challenged his convictions in both cases on

---

[1] Idaho Code section 18-705 prohibits resisting, obstructing, and delaying an officer in the discharge of any duty of his office. Although Bundy was charged and convicted of "delaying an officer" under Idaho Code section 18-705, for ease of reference for the remainder of this opinion, we will refer to this crime as resisting and obstructing.

1

intermediate appeal to the district court. The district court affirmed his convictions. Bundy then timely appealed to this Court and both cases were consolidated on appeal.

**A. On August 25, 2020, Idaho State Troopers removed Bundy from the Lincoln Auditorium and charged him with trespass and resisting and obstructing in Docket No. 50333.**

The facts in Docket No. 50333 occurred on August 25, 2020. Bundy was observing a committee meeting in the Lincoln Auditorium at the Idaho State Capitol building, when a disturbance created by other audience members resulted in the meeting being relocated to another room in the Capitol building. After that meeting ended, then-Speaker of the House, Scott Bedke, ordered the Lincoln Auditorium to be cleared and closed for the day. The Idaho State Troopers stationed at the Capitol building entered the auditorium, informed the individuals still inside that it was closed for the day, and warned them that they could be charged with criminal trespass if they did not leave the auditorium. Although others left the auditorium, Bundy remained seated. Troopers approached Bundy, seated at the press table, and asked him to leave. Bundy did not respond and remained seated. When the troopers attempted to remove Bundy, he "went limp." When troopers stood Bundy up so they could handcuff him, he fell to the floor and did not respond to the troopers' commands. As Bundy refused to leave under his own power, the troopers wheeled him out of the Capitol building in an office chair. He was placed under arrest and charged with one count of misdemeanor criminal trespass in violation of Idaho Code section 18-7008(2)(a) and (3)(b)(i), and misdemeanor resisting and obstructing an officer under Idaho Code section 18-705.

The criminal complaint charged Bundy with misdemeanor criminal trespass, alleging that Bundy:

> [O]n or about the 25th day of August 2020, in the County of Ada, State of Idaho, did willfully remain on the real property of another without permission, to wit: 700 W[est] Jefferson Street, Boise Idaho, knowing or with reason to know that his presence was not permitted in that he failed to depart immediately from the real property after being notified by the owner's agent to do so.

The complaint also charged Bundy with misdemeanor resisting and obstructing, alleging that he:

> [O]n or about the 25th day of August 2020, in the County of Ada, State of Idaho, did willfully resist, delay, and/or obstruct a public officer(s) . . . by refusing to follow Idaho State Police lawful commands during his arrest and removal from the State Capitol property, requiring officers to carry him and place him in and out of the patrol car and/or by refusing to follow Ada County Sheriff Officer lawful

2

commands during the booking and transport to cell process requiring officers to carry him and/or do everything for him required by the booking process.

In the months that followed, Bundy filed multiple motions to dismiss, which were denied by the magistrate court. Bundy's case proceeded to a four-day jury trial. The jury heard testimony from numerous witnesses, including Sergeant Blake Higley and Speaker Scott Bedke; Bundy also testified in his own defense. The jury convicted Bundy of one count of misdemeanor criminal trespass and one count of misdemeanor resisting and obstructing. Following the trial, Bundy filed a motion for judgment of acquittal, where he raised as-applied constitutional challenges to Idaho's criminal trespass statute, argued that the statute did not apply to public property, asserted that his arrest was unlawful, and maintained that he was passively resisting arrest. The magistrate court denied Bundy's motion.

Bundy was sentenced to pay a fine and court costs totaling $657.50 and sentenced to credit for time served of three days on the criminal trespass count. He was also ordered to pay a fine and court costs totaling $407.50, given credit for 3 days in jail, and directed to complete 40 hours of public service within 180 days in lieu of 2 days in jail on the resisting and obstructing count. Bundy's sentences were ordered to run concurrently.

Bundy appealed his convictions to the district court and raised many of the same arguments he made in his motion for acquittal. On intermediate appeal, the district court determined that Idaho's criminal trespass statute was not ambiguous and that the statute was not unconstitutionally vague or overbroad as applied to Bundy's conduct. The district court found that the criminal trespass statute did apply to public property based on the plain language of the statute. The district court noted that the trespass statute contains the terms "private," "public," and "real property," and when the statute is "read as a whole, [it] does not exclude public property." Bundy argued that Idaho Code section 67-1602(3) and House Rule 63 gave the Speaker of the House unbridled discretion to close the Capitol building, creating a situation where the Speaker can revoke or exclude a visitor's access to the building at will. The district court rejected the unbridled discretion argument, noting that the statute and House Rule 63 give the Speaker of the House the ability to preserve order and decorum, subject to an appeal to the House, and they grant him the ability to supervise the House floor and committee rooms, including the Lincoln Auditorium, among other parts of the building. The district court held that this is not "unbridled discretion." Bundy made a similar argument that Idaho Code sections 67-1602 and 67-1603 gave the Director of the Department of Administration "unbridled discretion" to revoke a visitor's permission to visit the

Capitol building. The district court rejected Bundy's "unbridled discretion" argument with respect to the Director of the Department of Administration, holding that the scope of Director's authority is limited by statute. The district court noted that the statutes grant the Director the ability to "determine the use of the public spaces in and around the [C]apitol."

Bundy also made arguments related to the separation of powers doctrine, which prohibits the transfer or delegation of power belonging to one branch of government (legislative, executive, and judicial) to another, except as permitted by the Idaho Constitution. Bundy maintained that Idaho Code sections 67-1602 and 67-1603 violated the separation of powers doctrine because they delegate lawmaking authority to the Director of the Department of Administration. He also argued that the trespass statute allows a government employee to revoke permission to enter or remain on public property in violation of the separation of powers doctrine. The district court rejected Bundy's separation of powers arguments, holding that the Director of the Department of Administration's authority is limited by statute and that Idaho Code sections 67-1602 and 67-1603 do not delegate lawmaking authority to the Director. The district court rejected Bundy's argument with respect to government employees, noting that they are limited by the exception to the trespass statute found in Idaho Code section 18-7008(6)(a)(i). The district court determined that Bundy's argument that he was only passively resisting arrest was unavailing because Bundy's arrest was lawful. The district court affirmed Bundy's convictions, and he timely appealed to this Court.

On appeal, Bundy raises the same as-applied constitutional challenges to Idaho's criminal trespass statute, arguing that it is both unconstitutionally vague and overbroad as applied to his conduct. He also contends that the criminal trespass statute does not apply to public property. Bundy again challenges his conviction for resisting and obstructing on the basis that his arrest was unlawful and that he was passively resisting. The State counters that the district court did not err when it affirmed Bundy's convictions.

**B. On August 26, 2020, the Director of the Department of Administration issued a trespass notice that prohibited Bundy from entering the public areas of the Capitol building and exterior for one year.**

The day after his arrest, Bundy returned to the Idaho State Capitol building. Idaho State Troopers removed him from the building. Then-Director of the Department of Administration, Keith Reynolds, attempted to give Bundy a copy of a trespass notice before Bundy was removed from the building. Because Bundy refused to accept the notice, he was later mailed a copy. The

4

notice informed Bundy that he was prohibited from being in the public areas of the Capitol building and grounds for one year, beginning on August 26, 2020. It provided:

> The Director of the Idaho Department of Administration, [sic] has the control, under Idaho Code sections 67-1602 to 1604, and 67-5709, over the properties identified below. I am writing to provide you with notice that . . . you are prohibited from appearing or otherwise being present at:
>
> - Public areas of the Idaho State Capitol Building 700 West Jefferson Street, Boise, Idaho 83702 and State Capitol Exterior.
>
> If you enter upon these properties you will be referred to law enforcement for charges of criminal trespass pursuant to Idaho Code [section] 18-7008. Should you have any legitimate business to conduct with agencies of the State of Idaho that requires you to be present on these state properties, you must make arrangements by phone with the State Security Manager at (208) 334-2222.

The notice explained that Bundy was prohibited from being in the public areas of the Capitol building because "[o]n August 25, 2020, you refused a lawful order of the legislature to vacate the premises." It also noted Bundy's "disruptive behavior impeded the execution of Government business and procedures. The result was a trespass order by the legislature that led to your arrest." The notice explained that Bundy "present[ed] a threat to disrupt the legitimate business conducted [at the Capitol building]" based on his "refusal to comply with lawful orders of government officials and peace officers[.]" Bundy was arrested for misdemeanor criminal trespass and misdemeanor resisting and obstructing in connection with his presence at the Capitol building on August 26, 2020, but those charges were later dropped.

**C. On April 8, 2021, Idaho State Troopers removed Bundy from the Capitol building twice and charged him with trespass and resisting and obstructing in Docket No. 50715.**

The facts in Docket No. 50715 occurred on April 8, 2021. Bundy returned to the Capitol building that day after meeting with his attorney and learning that the charges from August 26, 2020, had been dismissed. Bundy entered the Capitol building in the morning and stopped to use the men's restroom. Idaho State Troopers learned that Bundy had entered the building and approached him as he exited the men's restroom. Bundy refused to leave and went limp, as he had done on August 25, 2020. Multiple troopers picked Bundy up, placed him in a mesh cart, wheeled him out of the building, and carried him to a patrol car. Bundy was informed that he was arrested based on the trespass notice. Bundy went through the booking process and was released that same day. Later that afternoon, Bundy returned to the Capitol building. He entered the building and sat

5

on a bench outside the Senate chambers. When troopers learned he had re-entered the building, they again removed him. Bundy was later charged with two counts of misdemeanor criminal trespass in violation of Idaho Code section 18-7008(2)(a) and (3)(a)(ii), and one count of misdemeanor delaying an officer in violation of Idaho Code section 18-705.

The second amended criminal complaint in Docket Number 50715 charged Bundy with two counts of misdemeanor criminal trespass, each alleging that Bundy:

> [O]n or about the 8th day of April 2021, in the County of Ada, State of Idaho, did willfully enter the property of another located at 700 West Jefferson Street, Boise Idaho without permission knowing or having reason to know that his presence is not permitted because [Bundy] returned to and entered the property without permission within one year of having been notified by the owner's agent to remain off the property, while having plead [sic] guilty to or having been found guilty of a violation of Idaho Code [section] 18-7008 within the previous five years.

The third charge of the second amended criminal complaint charged Bundy with resisting and obstructing, alleging that Bundy:

> [O]n or about the 8th day of April 2021, in County of Ada, State of Idaho, did willfully delay a public officer, to-wit: Idaho State Troopers, in the attempt to discharge a duty of their office, by refusing to walk and/or support his own weight after being placed under arrest.

While the underlying case in Docket No. 50715 was pending, Bundy was convicted of misdemeanor trespass and resisting and obstructing in Docket No. 50333. In Docket No. 50715, Bundy filed multiple motions to dismiss before trial. Bundy also filed a motion to stay based on the petition for judicial review he filed in case number CV01-21-19130 to challenge the trespass notice, which the magistrate court denied. Bundy's motions made constitutional challenges to the trespass statute and the trespass notice, which were denied by the magistrate court. He also filed a motion for reconsideration, which was denied. Bundy argued that the criminal trespass notice was unconstitutionally vague and overbroad as applied to his conduct, that the use of the word "remains" in the criminal trespass statute created ambiguity, that the criminal trespass statute did not apply to public property, and that he was unlawfully arrested. The magistrate court held an evidentiary hearing on Bundy's motions. At the hearing, Bundy testified that he received the trespass notice and read it before he entered the Capitol building on April 8, 2021. Bundy also testified that he believed the notice was invalid and that it was no longer in place because the charges from August 26, 2020, were dismissed. Bundy testified that he did not contact the state

6

security manager before entering the building on April 8, 2021. The magistrate court denied Bundy's motions following the hearing.

Bundy's case proceeded to a jury trial. The Director of the Department of Administration, Idaho State Police Sergeant Zach Nichols, and others testified regarding Bundy's arrests inside the Capitol building. During his testimony, the Director described the trespass notice. He confirmed that Bundy had not contacted him or the security manager before entering the Capitol building. Sergeant Nichols testified regarding Bundy's arrest outside of the men's restroom, and the need for multiple troopers to remove Bundy from the building in a mesh cart. The Director also conceded that he did not have control over the area around the Senate chambers. Trooper Matthew Vallard testified regarding Bundy's arrest outside the Senate gallery hallway, noting that Bundy was seated on a bench near the Senate chambers. He testified that Sergeant Blake Higley approached Bundy and informed Bundy that he was trespassing. Sergeant Higley and another trooper placed Bundy in handcuffs and walked with Bundy toward the bottom of the stairs, when Bundy stopped and sat down. The troopers used the mesh cart to wheel Bundy out of the Capitol building a second time. The jury was unable to reach a verdict on count one charging misdemeanor criminal trespass, which resulted in a mistrial on that count. Count one was later dismissed by the State. The jury convicted Bundy of count two, misdemeanor criminal trespass, and count three, misdemeanor resisting and obstructing.

Bundy was sentenced on the two counts for which the jury found him guilty. On the misdemeanor trespass count, Bundy was ordered to pay a fine and court costs totaling $2,157.50, and he was ordered to serve ten days in jail, with credit for one day, and the remaining nine days were suspended. On the resisting and obstructing count, Bundy was ordered to pay a fine and court costs totaling $1,157.50, and he was ordered to serve ten days in jail, with credit for one day, and the remaining nine days were suspended. His sentences were ordered to be served consecutively. Bundy was also placed on unsupervised probation until March 16, 2023.

Bundy appealed his convictions to the district court. The district court noted that, although Bundy had raised ten issues on appeal, he did not support all the issues in his briefing with argument and legal authority. The district court considered those issues to be waived. The district court's opinion on intermediate appeal focused on Bundy's as-applied constitutional challenges to Idaho's criminal trespass statute, his contention that the criminal trespass statute did not apply to public property, and his arguments related to the separation of powers doctrine and unbridled

7

discretion. The district court determined that neither Idaho's criminal trespass statute nor the trespass notice Bundy received were ambiguous and that the statute and the notice were not unconstitutionally vague or overbroad as applied to Bundy's conduct. The district court explained that the criminal trespass statute did apply to public property, and it rejected Bundy's arguments with respect to the separation of powers doctrine and unbridled discretion. The district court affirmed Bundy's convictions. Bundy timely appealed the district court's decision.

Bundy raises the same as-applied constitutional challenges to Idaho's criminal trespass statute on appeal to this Court as he did on intermediate appeal to the district court. He argues that the statute does not apply to public property. Bundy also maintains that Idaho Code sections 67-1602(3), 67-1603, and 18-7008 violate the separation of powers doctrine, grant unbridled discretion to the Director of the Department of Administration to revoke visitor access to the Capitol building, and create a situation where government employees have unbridled discretion to prohibit individuals from the public areas of the Capitol building. Bundy also challenges his conviction for misdemeanor resisting and obstructing, arguing that his arrests for criminal trespassing were unlawful.

## II.    ISSUES ON APPEAL

Bundy raised several issues on appeal; however, we agree with the district court that not every issue was preserved for appellate review. After a review of both cases, we have combined the issues in both appeals and restate them as follows:

1. Did the district court err when it determined the criminal trespass statute was not vague as applied to Bundy's conduct?

2. Did the district court err when it determined that Idaho Code sections 67-1602 and 67-1603 do not grant the Speaker of the House or the Director of the Department of Administration unbridled discretion to revoke an individual's permission to visit the Capitol building?

3. Did the district court err when it determined the criminal trespass statute is not unconstitutionally overbroad as applied to Bundy's conduct?

4. Did the district court err when it determined Idaho's criminal trespass statute applies to public property?

5. Did the district court err when it determined that Idaho Code sections 67-1602, 67-1603, and 18-7008 do not violate the separation of powers doctrine?

6. Did the district court err when it affirmed Bundy's conviction for misdemeanor resisting and obstructing despite Bundy's claim that he was passively resisting an unlawful arrest?

8

### III.   STANDARDS OF REVIEW

"When reviewing a decision of a district court sitting in its appellate capacity, we do not review the decision of the magistrate court." *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016). Instead, this Court is "procedurally bound to affirm or reverse the decisions of the district court." *Id.* (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)).

Under Idaho Criminal Rule 29(a), the trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." I.C.R. 29(a). When this Court reviews the denial of a motion for judgment of acquittal, it "must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to such material evidence of the offense was proven beyond a reasonable doubt." *Clark*, 161 Idaho at 374, 386 P.3d at 897 (quoting *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006)). This Court considers the evidence in the record "in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012)).

"The constitutionality of statutes is a question of law." *State v. Leferink*, 133 Idaho 780, 783, 992 P.2d 775, 778 (1999) (citations omitted). "When this Court considers a claim that a statute is unconstitutional, we review the trial court's ruling *de novo* since it involves purely a question of law." *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998) (citations omitted). "The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and 'must overcome a strong presumption of validity.'" *Leferink*, 133 Idaho at 783, 992 P.2d at 778 (quoting *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990)). Further, "an appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." *Cobb*, 132 Idaho at 197, 969 P.2d at 246 (citation omitted).

### IV.   ANALYSIS

As a preliminary matter, with respect to Docket No. 50715, the district court noted on intermediate appeal that although Bundy raised ten issues on appeal, his briefing "does not address all these issues." The district court noted that it would not consider "issues not supported by argument and authority." (Citing *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).) The record on appeal to this Court is devoid of Bundy's briefing on intermediate appeal in Docket No. 50715. "It is the appellant's responsibility to provide an adequate record on appeal,

and this Court does not presume error on appeal." *State v. Hosey*, 134 Idaho 883, 888, 11 P.3d 1101, 1106 (2000). As a result, we confine our discussion of the issues in that case to Bundy's as-applied constitutional challenges to the criminal trespass statute, whether the criminal trespass statute applies to public property, and his arguments related to the separation of powers doctrine and unbridled discretion. Although we determine that Bundy waived his challenge of his conviction for resisting and obstructing, his arguments with respect to that conviction are the same as those in Docket No. 50333, where that issue was preserved.

**A. Idaho's criminal trespass statute is not vague as applied to Bundy's conduct.**

Generally, a defendant can demonstrate that a statute is vague "as applied" in two ways. *State v. Cook*, 165 Idaho 305, 310, 444 P.3d 877, 882 (2019). To succeed on an as-applied challenge, a defendant "must show that the statute . . . [1] failed to provide fair notice that [his] conduct was proscribed or [2] failed to provide sufficient guidelines such that the police had unbridled discretion in determining whether to arrest him[.]" *Id.* (quoting *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003), *abrogated on other grounds by Evans v. Michigan*, 568 U.S. 313 (2013)). "When analyzing vagueness, '[t]he words of a statute alleged to be unconstitutionally vague should not be evaluated in the abstract, but should be considered in reference to the particular conduct of the defendant challenging the statute." *Id.* (quoting *State v. Larsen*, 135 Idaho 754, 757, 24 P.3d 702, 705 (2000)).

Bundy argues that Idaho's criminal trespass statute is unconstitutionally vague as applied to his conduct because he contends that the statute is ambiguous and did not give him fair notice that his conduct was proscribed. He also maintains that the statute fails to provide sufficient guidelines to law enforcement and gives the Speaker of the House unbridled discretion. Both arguments require this Court to examine the language of the criminal trespass statute and the statutes governing control and maintenance of the Capitol building and grounds. Each argument will be discussed in turn.

1. *Idaho Code section 18-7008 provided fair notice that Bundy's conduct was proscribed; the statute is not ambiguous or "vague" based on the use of the term "remains" and its derivatives.*

Bundy argues that Idaho Code section 18-7008 "fails to give [him] adequate notice concerning the conduct that it proscribes on property open to the public, and forces [him] to guess at the meaning of subsections five, six, and seven, as well as the definition of *remains* and *permission* found in subsection one." He maintains that the criminal trespass statute is ambiguous

because various subsections use the term "remains." Bundy contends that the criminal trespass statute failed to provide adequate notice that his conduct was proscribed because he "cannot be expected to depart from property, which is open to the public, when the statute provides that he can ignore the command so long as he complies with other conditions," and "he cannot be expected to understand [the Speaker of the House's] order to constitute a revocation as defined by subsection five" because the Speaker's order "does not constitute a revocation as long as Bundy complies with the lawful conditions imposed on access."

Idaho Code section 18-7008(2)(a) describes the acts that constitute misdemeanor criminal trespass. Under subsection (2)(a), a person commits a trespass "when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted." I.C. § 18-7008(2)(a). The statute provides:

> A person has reason to know his presence is not permitted when, except under a landlord-tenant relationship, he fails to depart immediately from the real property of another after being notified by the owner or his agent to do so, or he returns without permission or invitation within one (1) year, unless a longer period of time is designated by the owner or his agent.

*Id.* Subsection (1) of the criminal trespass statute defines terms used throughout the rest of the statute. *See* I.C. § 18-7008(1). Subsection (1)(g) defines the term "remains" as "to fail to depart from the real property of another immediately when notified to do so by the owner or his agent." I.C. § 18-7008(1)(g). Subsection (6)(a)(i) explains certain exclusions from the trespass statute:

> A person shall not be guilty of trespass under this section for entering or remaining upon real property if the person entered or remained on the property pursuant to any of the following rights or authorities:
>
> (a) An established right of entry or occupancy of the real property in question, including but not limited to:
>
> (i) An invitation, whether express or implied, to enter or remain on real property including, but not limited to, the right to enter property that is, at the time, open to the public, if the person is in compliance with lawful conditions imposed on access[.]

I.C. § 18-7008(6)(a)(i). Subsection (7) provides examples of the exclusions outlined in subsection (6). Bundy argued below that the definition of the term "remains" in subsections (2), (5), (6), and (7) of the criminal trespass statute render the statute ambiguous and vague.

On intermediate appeal, the district court examined the plain language of the statute and determined that the statute was not vague. It explained that "[t]he term 'remains' is in subsection

11

two, but the term is not in subsections five, six, or seven," noting that the statute "only defines the term 'remains.'" The district court noted that subsections five, six, and seven all use derivatives of the word "remains," such as "remaining," "remained," and "remain," all of which are not defined in Idaho Code section 18-7008(1). It determined that, even if the definition of the term "remains" was intended to be applied to the derivatives of "remains," "the definition does not make the statute vague" because "[t]he definition of 'remains' is to fail to depart immediately, or to stay." It determined that "[t]he plain language of the statute reflects that the derivatives are used in place of 'stay' in the other subsections" and "[t]he overall meaning is the same."

The district court also determined that Idaho's criminal trespass statute was not vague as applied to Bundy because the subsections "have distinct significance within the statute." The district court explained that subsection (2)(a) states what acts constitute a misdemeanor trespass, while subsection six "describes what makes a person not guilty [of trespass], representing an exception that avoids a charge of trespass." The district court noted that Bundy "was adequately informed that the statute prohibited him from remaining in the [C]apitol auditorium after being asked to leave by a state agent," noting that "[t]he lawful condition that permitted [Bundy] to enter the auditorium was that the legislature was in session. When the session ended the condition for lawful entry ended."

We are unpersuaded by Bundy's byzantine statutory interpretation arguments. He attempts to inject ambiguity into Idaho's criminal trespass statute even though the plain language of the statute is unambiguous. We note that "[a]mbiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020) (quoting *Hamilton ex rel. Hamilton v. Reeder Flying Serv.*, 135 Idaho 568, 572, 21 P.3d 890, 894 (2001)).

We find no error with the district court's analysis of the criminal trespass statute as applied to Bundy's conduct. We agree with the district court that the statutory definition of the word "remains" used in subsection (2)(a)(i), which is not used in subsections (5) through (7), does not render the criminal trespass statute vague as applied to Bundy's conduct. The use of the word "remains" or its derivatives does not change the plain meaning of the trespass statute. We agree with the district court that the statute provided adequate notice to Bundy that he could no longer stay in the Lincoln Auditorium after he was told to leave. Once the Speaker of the House ordered the Lincoln Auditorium to be closed and cleared, the auditorium was no longer open to the public

12

for the day. The lawful conditions on access that allowed Bundy and others to be present—to observe the legislature in session—had ended. We are not persuaded by Bundy's overly complicated interpretation of the statute or his argument that he was free to ignore lawful requests to leave because he was complying with lawful conditions imposed on access. Idaho's criminal trespass statute provided adequate notice to Bundy that he was prohibited from staying in the Lincoln Auditorium after being asked to leave and that the exceptions to trespass do not apply to him. We hold that the criminal trespass statute is not vague as applied to Bundy's conduct because the statute provided Bundy with adequate notice that his conduct was proscribed.

2. *The unbridled discretion doctrine applies to law enforcement, not to non-law enforcement state actors; Idaho Code section 18-7008, when interpreted with House Rule 63 and Idaho Code section 67-1602(3), grants neither law enforcement nor the Speaker unbridled discretion.*

Bundy also argues that Idaho Code sections 67-1602(3) and 18-7008 fail to provide sufficient guidelines for enforcement and grant unbridled discretion to the Speaker of the House to prohibit individuals from being present in the Lincoln Auditorium, rendering the criminal trespass statute vague as applied to Bundy's conduct.

Generally, statutes that give *law enforcement* unbridled discretion to effectuate an arrest are void for vagueness when they "invite[] arbitrary and discriminatory enforcement." *See State v. Kelley*, 159 Idaho 417, 422, 361 P.3d 1280, 1285 (Ct. App. 2015) (citing *State v. Freitas*, 157 Idaho 257, 261, 335 P.3d 597, 601 (Ct. App. 2014)). "A statute avoids problems with arbitrary and discriminatory enforcement by identifying a core of circumstances to which the statute or ordinance unquestionably could be constitutionally applied." *Id.* (quoting *Freitas*, 157 Idaho at 261, 335 P.3d at 601). To succeed on an as-applied vagueness challenge on this basis, this Court reviews the statute's language to determine whether it grants law enforcement unbridled discretion in determining whether to effectuate an arrest. *See State v. Cook*, 165 Idaho 305, 310, 444 P.3d 877, 882 (2019); *see also Skilling v. United States*, 561 U.S. 358, 412 (2010) (noting that the void-for-vagueness doctrine addresses concerns about arbitrary and discriminatory prosecutions); *Smith v. Goguen*, 415 U.S. 566, 575 (1974) (warning that a failure to have adequate guidelines for enforcement may lead to "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections"). The determination of whether a statute grants unbridled discretion generally does not apply to non-law enforcement state actors, as they are not involved in determining whether to effectuate an arrest or other aspects of enforcement of the statute. As

13

the State notes, in this instance, *the Speaker of the House* is not a law enforcement officer, nor is he a prosecutor. In this context, the unbridled discretion doctrine does not apply to a person in the Speaker's role.

Idaho Code sections 67-1602(3) and 18-7008, and House Rule 63 do not grant unbridled discretion to the Idaho State Police troopers to prohibit individuals from accessing public areas of the Capitol building. At trial, the jury heard testimony from Sergeant Higley that the troopers stationed in the Capitol do not have independent discretion to arrest individuals in the areas of the Capitol building that are under the control of the legislature, absent a misdemeanor being committed in their immediate presence. Sergeant Higley testified that the troopers could only act after the Speaker ordered the Lincoln Auditorium to be cleared and Bundy refused to leave. Idaho Code section 67-1602(3) and Idaho Code section 18-7008 when construed together, do not grant the police "unbridled discretion" to decide to make an arrest; they address the scope of the Speaker's authority.

The district court noted that Idaho Code section 67-1602(3) and House Rule 63 "define the scope of the [S]peaker's authority, subject to an appeal to the House." The district court explained that "[t]his is not unbridled discretion." The version of Idaho Code section 67-1602(3) in place at the time Bundy was removed from the Lincoln Auditorium outlined what spaces the legislative department controlled in the Capitol building:

> The legislative department shall determine the use of the space on the first, third and fourth floors as well as the basement, which basement shall include the underground atrium wings. All space within the first, third and fourth floors and the basement shall be allocated by the presiding officers of the senate and house of representatives. The presiding officers shall maintain such space . . . provided however, that the presiding officers may contract with the [D]irector of the [D]epartment of [A]dministration to maintain such space[.]

I.C. § 67-1602(3) (2007).[2] House Rule 63 outlines the duties of the Speaker of the House with respect to the House chamber and other spaces. House R. 63. The Speaker's duties include "to oversee decorum and preserve order therein." House R. 63(2). The rule explains that "[t]he Speaker shall preserve order and decorum and decide questions of order, subject to an appeal to the House." House R. 63(1). Under the rule, the Speaker has "general charge and supervision of the House floor, chamber, galleries, office spaces, committee rooms, adjoining and connecting hallways and passages[.]" House R. 63(2).

---

[2] This statute was later amended. *See* Act of Mar. 17, 2022, ch.61 § 1, 2022 Idaho Sess. Laws 193–94.

As the district court explained, both section 67-1602(3) and House Rule 63 "give authority to the Speaker to determine the use of the Lincoln Auditorium," and to make other decisions regarding the use of space "when conducting legislative business." Although on August 25, 2020, the auditorium was used to hold a committee meeting that was open to the public, the meeting was moved to a different location inside the Capitol building because of a disruption. At the time the Speaker ordered the Lincoln Auditorium to be cleared, the committee meeting had concluded. As the district court noted, the condition that allowed the public to enter the Lincoln Auditorium and observe the proceedings taking place—a public legislative committee meeting—had ended. House Rule 63 provided the Speaker of the House with the authority to close the Lincoln Auditorium because it falls under his supervision of committee rooms. The Speaker of the House also had the duty to oversee decorum and preserve order to facilitate legislative business. We hold that Idaho Code section 67-1602(3), House Rule 63, and Idaho Code section 18-7008 do not grant the Speaker of the House "unbridled discretion" to prohibit individuals from entering and remaining in the Lincoln Auditorium and, in this instance, the Speaker acted within the scope of his authority to close the auditorium once the committee's business had ended.

**B. The trespass notice is unambiguous and is not unconstitutionally vague as applied to Bundy's conduct.**

Bundy raises similar "vague" as-applied challenges to the trespass notice in Docket No. 50715, which we will discuss next.

*1. The trespass notice provided clear notice to Bundy of what conduct was prohibited.*

Bundy raises arguments similar to those discussed in Section A.1 with respect to the trespass notice. We find no error with the district court's determination that the trespass notice was not vague as applied to Bundy's conduct. The language of the trespass notice is clear and unambiguous. It warned Bundy that he was "prohibited from appearing or otherwise being present at" the public areas of the Capitol building. The notice explained that it would be in place for one year from August 26, 2020. The notice provided instructions to Bundy about how he could enter the Capitol building if he had "legitimate business" to conduct on the premises. Included in the notice was a phone number for the state security manager and instructions to Bundy that he was required to make arrangements in advance before entering the building. We hold that the trespass notice itself was not unconstitutionally vague and that it provided clear notice to Bundy of what was prohibited.

15

*2. The unbridled discretion doctrine applies to law enforcement, not to non-law enforcement state actors; Idaho's criminal trespass statute, Idaho Code section 18-7008, when interpreted with Idaho Code sections 67-1602(1) and 67-1603 grants neither law enforcement nor the Director of the Department of Administration unbridled discretion.*

Bundy raises arguments regarding "unbridled discretion" and the authority of the Director of the Department of Administration similar to those discussed above in Section A.2. These arguments are unavailing. Idaho Code section 67-1602(1) does not grant unbridled discretion to *law enforcement* to trespass individuals from the public areas of the Capitol building and grounds. In this context, the unbridled discretion doctrine does not apply to a person in the *Director of the Department of Administration*'s role. Nevertheless, we will analyze whether Idaho Code sections 18-7008, 67-1602(1), and 67-1603 give unbridled discretion to the Director of the Department of Administration to prohibit individuals from accessing the public areas of the Capitol building and grounds.

Idaho Code section 67-1602(1) outlines the allocation and control over public space in the Capitol building. The version of Idaho Code section 67-1602(1) that was in place on August 26, 2020, stated that the Director of the Department of Administration was responsible for maintaining the public spaces in the Capitol building:

> The interior within the rotunda, the hallways on the first and second floors, the restrooms located adjacent thereto, the elevators, the stairways between the first, second, third and fourth floors (excepting the interior stairways between the third and fourth floors within the legislative chambers), shall be space within the capitol building open to the public ("public space"). Subject to this chapter, the [D]irector of the [D]epartment of [A]dministration shall maintain all public space.

I.C. § 67-1602(1) (2007). Idaho Code section 67-1603 addresses the exterior of the Capitol building and grounds. I.C. § 67-1603. It grants the Director "exclusive control of the exterior, grounds and systems of the [C]apitol building." *Id.* As the district court noted, "[t]hese statutes give authority to [the Director of the Department of Administration] to determine the use of the public spaces in and around the [C]apitol." The district court recognized that the "statutes define the scope of [the Director's] authority, which does not include the legislative floors or other offices inside the [C]apitol." The plain language of these statutes indicates that they do not grant the Director of the Department of Administration unbridled discretion to revoke a visitor's permission to visit the Capitol building. The Director is limited by the exceptions to trespass outlined in Idaho Code section 18-7008(6); in other words, the Director would not be able to prohibit individuals

16

from accessing areas that are open to the public if the individuals are complying with lawful conditions on access. We agree with the district court that the Director acted within the scope of his authority when he prohibited Bundy from accessing the public areas of the Capitol building.

Along the same lines, with respect to Bundy's argument that the same statutes allow government employees at the Capitol building unfettered authority, we note that those employees are also limited by Idaho Code section 18-7008(6)(a)(i)'s exception to trespass. So long as an individual visitor to the Capitol building is complying with lawful conditions on access, that person cannot be charged with misdemeanor criminal trespass.

## C. Idaho's criminal trespass statute is not unconstitutionally overbroad as applied to Bundy's conduct.

Bundy raises as-applied overbreadth challenges to both the criminal trespass statute in Docket No. 50333 and the trespass notice in Docket No. 50715. We address his overbreadth challenges to the trespass statute next. Generally, an as-applied challenge based on overbreadth is rooted in the particular facts of the case. *State v. Manzanares*, 152 Idaho 410, 427, 272 P.3d 382, 399 (2012). "[T]he party challenging the constitutionality of the statute must demonstrate that the statute, as applied to the defendant's conduct, is unconstitutional." *Id.* at 426, 272 P.3d at 398 (quoting *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008)). "If a statute as applied to a particular defendant infringes upon his or her freedom of speech protected by the First Amendment, the defendant's conviction must be reversed without any showing that such infringement was 'substantial.'" *State v. Poe*, 139 Idaho 885, 893, 88 P.3d 704, 712 (2004) (citing *Cohen v. California*, 403 U.S. 15 (1971)).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). As discussed in Section A.1 above, Idaho's criminal trespass statute provides:

> A person commits criminal trespass and is guilty of a misdemeanor, except as provided in subsection (3)(a)(i) of this section, when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted. A person has reason to know his presence is not permitted when, except under a landlord-tenant relationship, he fails to depart immediately from the real property of another after being notified by the owner or his agent to do so, or he returns without permission or invitation within one (1) year, unless a longer period of time is designated by the owner or his agent.

17

I.C. § 18-7008(2)(a). Subsection (6)(a)(i) creates an exception to the crime of trespass when an individual has "the right to enter property that is, at the time, open to the public, if the person is in compliance with lawful conditions imposed on access[.]" I.C. § 18-7008(6)(a)(i).

This is not the first time this Court has addressed an overbreadth challenge to Idaho's criminal trespass statute. *See State v. Korsen*, 138 Idaho 706, 713–16, 69 P.3d 126, 133–36 (2003), *overruled on other grounds by Evans v. Michigan*, 568 U.S. 313 (2013). In *Korsen*, the defendant was charged with misdemeanor criminal trespass after he went to an Idaho Department Health and Welfare office "to discuss his child support obligations," and ultimately engaged in a "discussion [that] grew louder and louder" until he was asked to leave the premises, and he refused. *Id.* at 710, 69 P.3d at 130. The magistrate court dismissed the charge based on a finding that the criminal trespass statute was unconstitutionally void for vagueness. *Id.* The district court affirmed and determined that the statute was unconstitutionally overbroad. *Id.* The State appealed, and this Court reversed. *Id.* at 710, 716, 69 P.3d at 130, 136. We held that the criminal trespass statute "is not aimed at regulating speech or communication in any form," and that "in light of the statute's plainly legitimate sweep in regulating conduct, it is not so substantially overbroad that any overbreadth that may exist cannot be cured on a case-by-case basis." *Id.* at 715, 69 P.3d at 135. We noted, in the context of cases "involving purely conduct and not speech," that "[p]hysical presence in a public building dedicated to public uses other than that of a public thoroughfare, even presence for the purpose of communicating ideas, is not 'pure speech,' " and "[n]ot all conduct claimed to have communicative purpose is protected as speech by the First Amendment." *Id.* We held that the situation at issue in *Korsen* was not one "where the exercise of free speech was impinged." *Id.* We explained that the defendant "showed up at the Health and Welfare office to conduct legitimate business" and "[w]hen it appeared that his desire to obtain modification of [his child support] obligation could not be obtained at that office . . . , the purpose of his visit to the Health and Welfare office came to an end." *Id.*

With respect to Docket No. 50333, Bundy entered the Capitol building on August 25, 2020, and went to the Lincoln Auditorium to observe a committee meeting. Once the meeting was moved to a different location inside the Capitol building, and the meeting had ended, his purpose for being in the Lincoln Auditorium came to an end. Although the criminal trespass statute has been amended since *Korsen* was decided, the statute is still not aimed at regulating speech or communication in any form. The language in subsection (2)(a) and the addition of subsection

18

(6)(a)(i) and other sections that specifically address private property do not, by their plain language, attempt to regulate speech or communication. We acknowledged the possibility of a future case in *Korsen* where a prosecution for criminal trespass "against a person on public property who is exercising his or her free speech rights" could conceivably "be attacked as applied to that constitutionally-protected conduct." *Id.* at 715–16, 69 P.3d at 135–36. Notwithstanding Bundy's argument that his case presents the Court with this very scenario, we are unpersuaded by his argument that his mere physical presence in the Lincoln Auditorium "constitutes protected speech" in this case. We hold that the facts of Bundy's case do not provide a situation where his right to free speech was impinged. Bundy entered the Capitol building and went to the Lincoln Auditorium to observe a legislative committee meeting. When that meeting was moved out of the Lincoln Auditorium, and later ended, Bundy's purpose for being inside the Lincoln Auditorium ended. As a result, Bundy's free speech rights were not impinged when troopers asked him to leave the auditorium and he refused. We hold that the criminal trespass statute is not unconstitutionally overbroad as applied to Bundy's conduct.

We note that Bundy's main contention is that the 2018 version of the statute now differentiates between public and private property, while the earlier version did not. He argues that reliance on *Korsen* and other cases issued before the 2018 amendment is misguided. We disagree. Our reasoning in *Korsen* remains relevant here even if the statute itself has been amended because the plain language of the criminal trespass statute did not change to the point where it is aimed at regulating speech or communication in any form. We agree with the district court that Bundy was not charged with trespass because he was engaged in speech; rather, he was charged with trespass for refusing to leave the Lincoln Auditorium after the meeting he was attending had ended and he was asked to leave. Thus, the criminal trespass statute was not overbroad as applied to Bundy's conduct.

## D. The trespass notice was not unconstitutionally overbroad as applied to Bundy's conduct.

Having discussed Bundy's overbreadth as-applied challenge to the trespass statute, we will discuss his overbreadth as-applied challenge to the trespass notice in Docket. No. 50715. The district court determined that the Director of the Department of Administration's trespass notice was not unconstitutionally overbroad as applied to Bundy's conduct when he was arrested twice on April 8, 2021, for entering the Capitol building. The district court explained that Bundy "was not trespassed from the [C]apitol on August 26, 2020, because he was engaged in speech" and that

Bundy "has been given due process to challenge the notice through the proceedings below and on appeal." It explained that "[t]here is no indication that the security manager, or any other government employee, will be determining whether [Bundy] has legitimate business at the [C]apitol" and "[t]he fact [that Bundy] must notify security of his intent to be present at the [C]apitol does not restrain his First Amendment rights." The district court noted that the Director of the Department of Administration "has the authority to trespass [Bundy] from the public areas of the [C]apitol," and that "[t]he request to contact security before coming to the [C]apitol is unrelated to the suppression of expression . . . ." It is meant to "further the interest of maintaining a safe environment for everyone who conducts business there."

This Court has upheld convictions for misdemeanor criminal trespass when a defendant is in violation of a trespass notice based on the defendant's *conduct*, not the defendant's speech. *State v. Clark*, 161 Idaho 372, 377–78, 386 P.3d 895, 900–01 (2016) (per curiam). We explained in *Clark* that an arrest and conviction for "nonexpressive conduct"—being physically present in violation of a notice—does not implicate a defendant's First Amendment rights. *Id.* In *Clark*, the State appealed after the defendant's conviction for misdemeanor trespass was overturned on appeal by the Court of Appeals, and we reversed. *Id.* at 374, 386 P.3d at 897. The defendant in *Clark* had been prohibited from entering the Idaho Industrial Commission's Boise office for one year based on "repeated disruptive arguments and confrontations" with employees. *Id.* at 373, 386 P.3d at 896. The trespass notice was later extended for another year. *Id.* During that time, the defendant returned to the office and was charged with misdemeanor criminal trespass when he was asked by staff to leave, and he refused. *Id.* at 373–74, 386 P.3d at 896–97.

We affirmed the defendant's conviction for misdemeanor trespass, explaining that the defendant was charged with trespass not based on the content of his speech, but on his *conduct* in violating the trespass notice itself. *Id.* at 378, 389 P.3d at 901. We adopted and affirmed the Court of Appeals' analysis in the *Pentico* cases, which determined the criminal trespass statute was not overbroad as applied to Christopher Pentico, and affirmed his convictions for trespass based on "his conduct of visiting a public building . . . in violation of the notice banning him from that building and not the content of any communication[.]" *Id.* at 377, 386 P.3d at 900 (quoting *State v. Pentico*, 151 Idaho 906, 914, 265 P.3d 519, 527 (Ct. App. 2011) (*Pentico I*); *see also Pentico v. State*, 159 Idaho 350, 360 P.3d 359 (Ct. App. 2015) (*Pentico II*) (affirming trespass conviction

20

based on defendant's entry into a government building after he had received notice that he was no longer authorized to be there).

In *Pentico II*, the Court of Appeals explained that "it was Pentico's nonexpressive conduct—his entry into the third floor of the Borah Building after receiving notice that he was no longer authorized to be there—not his speech, for which he was punished as a trespasser." 159 Idaho at 355, 360 P.3d at 364. The Court of Appeals noted that, although "Pentico has provided evidence that he was attempting to exercise his First Amendment rights" his "rights were not infringed when he was charged with trespass for entering the third floor of the Borah Building to petition the government for redress of his grievances." *Id.* We adopted the Court of Appeals' reasoning in the *Pentico* cases and applied that reasoning to the situation in *Clark.* 161 Idaho at 378–79, 386 P.3d at 900–01. We determined that the defendant in *Clark* "had no constitutional right to remain on the Industrial Commission premises after he was asked to depart, and the request to depart was not made for the purpose of limiting his right to speak or to seek redress of his grievance with the Supreme Court's opinion." *Id.* We held that the defendant in *Clark* had failed to show that the criminal trespass statute was unconstitutionally overbroad as applied to his conduct. *Id.*

In Docket No. 50715, the criminal trespass statute and the notice of trespass were not unconstitutionally overbroad as applied to Bundy. Bundy's conviction for misdemeanor criminal trespass was based on Bundy's *conduct* in entering the Capitol building after he had received notice that he was trespassed for one year. It was not based on Bundy's speech. The record below established that Bundy was not arrested for the purpose of limiting his ability to engage in political speech, including meeting with specific legislators, but that it was based on Bundy's physical presence in the building after he had received notice prohibiting him from accessing public areas of the Capitol building. The State charged Bundy with misdemeanor criminal trespass, as outlined in the second amended criminal complaint, based on his conduct in entering the Capitol building on April 8, 2021, "knowing or having reason to know that his presence is not permitted because [he] returned to and entered the property without permission within one year of having been notified by the owner's agent to remain off the property[.]"

At the jury trial, the Director of the Department of Administration testified regarding the trespass notice, including the provision that allowed Bundy to enter the Capitol as part of "any legitimate business [he had] to conduct with agencies of the State of Idaho," so long as he made

21

arrangements in advance with the building's security manager. The Director testified that Bundy did not contact him or the security manager before entering the Capitol building on April 8, 2021. Sergeant Zach Nichols testified that Bundy was removed from the building after the troopers became aware he had entered the building and was inside the men's restroom. Sergeant Nichols testified that Bundy was arrested for violating the trespass notice itself and that Bundy asked multiple times why he was being trespassed. There was no testimony indicating that the arrest was due to the substance of anything Bundy was trying to communicate. Along the same lines, Trooper Vallard testified that Bundy was arrested for criminal trespass because he was sitting outside of the Senate chambers on a bench in the hallway after he had been prohibited from entering the public areas of the Capitol building. There was no testimony indicating that Bundy was arrested based on the content of his speech during the second arrest. Although Bundy claims he was arrested for his attempts to "express political speech" with members of the legislature, the record below is devoid of evidence that Bundy's subjective purpose in entering the Capitol building on April 8, 2021, was conveyed to anyone at the time. As a result, we hold that the trespass notice was not unconstitutionally overbroad as applied to Bundy.

### E. Idaho's criminal trespass statute applies to both public and private property.

Bundy argues that Idaho's criminal trespass statute does not apply to public property. We discuss that argument next. He maintains that the legislature, when it amended the statutory scheme related to both civil and criminal trespass, did not intend to apply the misdemeanor criminal trespass statute to public property, based on the definition of the term "permission" in the statute, and the legislative debates surrounding trespassing on private property.

Idaho Code section 18-7008(2)(a) describes the acts that constitute misdemeanor criminal trespass, explaining that a person commits a trespass "when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted." I.C. § 18-7008(2)(a). The statute explains:

> A person has reason to know his presence is not permitted when, except under a landlord-tenant relationship, he fails to depart immediately from the real property of another after being notified by the owner or his agent to do so, or he returns without permission or invitation within one (1) year, unless a longer period of time is designated by the owner or his agent.

I.C. § 18-7008(2)(a). Subsection (1) of the criminal trespass statute defines terms that are used throughout the rest of the statute. I.C. § 18-7008(1).

22

Idaho Code section 18-7008(1)(f) defines the term "permission" as:

> [W]ritten authorization from the owner or his agent to enter upon private land, which shall include the signature of the owner or his agent, the name of the person being given permission, the appropriate dates that the permission is valid and a general description of the property; or another form of permission or invitation recognized by law.

I.C. § 18-7008(1)(f). Subsection (1)(g) defines the term "remains" as "to fail to depart from the real property of another immediately when notified to do so by the owner or his agent." I.C. § 18-7008(1)(g). Subsection (6)(a)(i) explains certain exclusions from the trespass statute:

> A person shall not be guilty of trespass under this section for entering or remaining upon real property if the person entered or remained on the property pursuant to any of the following rights or authorities:
>
> (a) An established right of entry or occupancy of the real property in question, including but not limited to:
>
> (i) An invitation, whether express or implied, to enter or remain on real property including, but not limited to, the right to enter property that is, at the time, open to the public, if the person is in compliance with lawful conditions imposed on access[.]

I.C. § 18-7008(6)(a)(i). On intermediate appeal, the district court determined that Idaho's criminal trespass statute applies to both public and private property based on the plain language of the statute. The district court noted that the statute uses "the terms 'private' and 'public' where necessary to distinguish between each type of property," and that "[t]he term 'real property' is otherwise used throughout." The district court noted that subsection (6)(a)(i) "recognizes permission to enter upon state property by the public under conditions. The statute allows a state agent to revoke that permission by notifying the public to depart from a public building or area when these conditions do not exist." As a result, the district court noted that the plain language of the statute supports the interpretation that it applies to public property as well as private property.

"Statutory interpretation begins with the statute's plain language." *State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016) (quoting *State v. Owens*, 158 Idaho 1, 3, 343 P.3d 30, 32 (2015)). "This Court considers the statute as a whole, and gives words their plain, usual, and ordinary meanings" *Id.* (quoting *Owens*, 158 Idaho at 3, 343 P.3d at 32). Generally, "[w]here the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction." *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999) (citation omitted).

Bundy focuses on the definition of "permission" in Idaho Code section 18-7008(1)(f), which begins with, "[w]ritten authorization from the owner or his agent to enter upon *private* land . . . ." I.C. § 18-7008(1)(f) (emphasis added). However, this subsection is not limited to private property. The last phrase of the subsection provides, "or another form of permission or invitation recognized by law." *Id.* This phrase is not limited to private property. As explained above, Idaho Code section 18-7008 as a whole is not limited to private or public property but addresses trespasses on real property. By focusing on one phrase in a definition section, Bundy ignores the language in the statute that describes the crime of trespass: "A person commits criminal trespass and is guilty of a misdemeanor . . . when he enters or remains on the real property of another without permission, knowing or with reason to know that his presence is not permitted." I.C. § 18-7008(2)(a). This language refers to real property and is not limited to public property or to private property.

As we noted above in Section A.1, we hold that the criminal trespass statute is unambiguous. We agree with the district court that the plain language of the statute applies to both public and private property. The statute's reference in subsection (6)(a)(i) to property that is open to the public and its other references throughout to real property indicate that its application is not limited only to private property. We need not look to legislative history and intent to determine the scope of the statute.

**F. Idaho code sections 67-1602(3), 67-1603, and 18-7008 do not violate the separation of powers doctrine.**

Bundy argues that certain statutes violate the separation of powers doctrine. The district court determined that Idaho Code sections 67-1602(3) and 67-1603 "do not delegate lawmaking authority to [the Director of the Department of Administration]," because his "authority under the statutes is limited to managing the use of the public areas of the [C]apitol and [grounds]." The district court also determined that Idaho Code section 18-7008 did not violate the separation of powers doctrine because it does not, as Bundy argued, "allow[] a government employee to revoke permission to enter or remain on public property 'at any time, for any reason.'" Citing the exceptions to criminal trespass outlined in subsection (6) of the statute, the district court noted that the statute "limits the authority of a government employee to revoke permission to be on public property when a person is compliant with lawful conditions imposed on access." We agree with the district court's analysis.

24

"The non[-]delegation doctrine bars Congress from transferring its legislative power to another branch of Government." *Bedke v. Ellsworth*, 168 Idaho 83, 95, 480 P.3d 121, 133 (2021) (alteration in original) (quoting *Gundy v. United States*, 588 U.S. 128, 132 (2019)). To determine whether a statute is "an unconstitutional delegation of legislative power," this Court considers "whether the statute imposes guidelines on the decision-making body, or grants 'unbridled' authority to that body." *Id.* (quoting *Emps. Res. Mgmt. Co. v. Kealey*, 166 Idaho 449, 454, 461 P.3d 731, 736 (2020)). "[T]he crux of the analysis is an examination of whether the statute lacks 'standards, guidelines, restrictions or qualifications of any sort placed in the delegating legislation." *Id.* (quoting *Emps. Res. Mgmt. Co.*, 166 Idaho at 454, 461 P.3d at 736). "[A] lack of legislative guidance violates the Idaho Constitution's separation of powers doctrine as an unbridled delegation of lawmaking power, while the presence of such guidelines and restrictions creates a proper 'fact-finding' status to ascertain the facts and conditions upon which the law becomes operative." *Id.* (quoting *Emps. Res. Mgmt. Co.*, 166 Idaho at 454, 461 P.3d at 736). This Court also considers "the practical context of the problem to be remedied and the policy to be served." *Id.* (quoting *Emps. Res. Mgmt. Co.*, 166 Idaho at 454, 461 P.3d at 736).

Generally, "[t]he doctrine focuses on the delegation of legislative authority to a *separate, co-equal branch of government*, i.e., the executive or the judiciary." *Id.* This Court has held that the separation of powers doctrine is inapplicable to Idaho Code section 67-1602(3) because even if the statute delegates authority "within the legislative branch, the ultimate power to wield that delegation remains in the [l]egislature." *Id.* In other words, the statute does not delegate authority to a "coordinate branch of government . . . to determine the use of that space [within the Capitol building] or to use legislative law-making power." *Id.* In *Bedke*, we held that the statute itself "unambiguously delegates authority to the presiding officers to both determine the use of and to allocate the space" on the floors outlined in Idaho Code section 67-1602(3). *Id.* at 96, 480 P.3d at 134.

Bundy argues that Idaho Code sections 67-1602 and 67-1603 "unconstitutionally delegate[] authority to the [D]irector without constitutional safeguards." He contends that section 67-1603 "gives unbridled delegation because it fails to set any guidelines by which a person who is issued a trespass notice can challenge that notice." Bundy argues that he "has a liberty interest in his First Amendment right to redress his government, to speak at hearings at the Capitol building, and to associate with legislators whose offices are found inside of the barrier created by

25

the Director's control over the exterior of the Capitol building." He also argues that section 67-1603 "creates an unacceptable risk" because "there are no limits placed on the Director's ability to revoke permission to enter or remain at the Capitol building at any time and for any reason." Bundy maintains that the Director of the Department of Administration "usurp[ed] legislative authority" to use his authority under section 67-1603 "to build a mote [sic] around the interior of the Capitol building."

We hold that Idaho Code sections 67-1602 and 67-1603 do not violate the separation of powers doctrine because they do not delegate legislative or lawmaking authority to another branch of government, nor do they transfer to the Director of the Department of Administration the authority to determine the use of different parts of the Capitol building. They do grant the Director the authority to maintain the public sections of the Capitol building and grounds. Idaho Code section 67-1603 grants the Director "exclusive control of the exterior, grounds and systems of the [C]apitol building." I.C. § 67-1603. Idaho Code section 67-1604 allows the Director of the Department of Administration to "promulgate rules, pursuant to chapter 52, title 67, Idaho Code, governing access to and use by the public of the [C]apitol building and its grounds." I.C. § 67-1604. The trespass notice provided that the Director "has the control, under Idaho Code sections 67-1602 to 1604, and 67-5709, over the properties identified below." It provided that "I am writing to provide you with notice that . . . you are prohibited from appearing or otherwise being present at: Public areas of the Idaho State Capitol Building 700 West Jefferson Street, Boise, Idaho 83702 and the State Capitol Exterior." This is not the result of a delegation of authority that offends the separation of powers doctrine. Idaho Code sections 67-1602 and 67-1603 outline the scope of the Director's authority, as discussed in Section A.2. The Director of the Department of Administration is also limited by the law concerning trespass found in Idaho Code section 18-7008(5) and (6). As noted in Section A.2 as well, those same statutes do not grant government employees the unfettered ability to revoke a visitor's access to public areas of the Capitol building because the employees are limited by the criminal trespass statute and its exceptions found in Idaho Code section 18-7008(5) and (6).

We agree with the district court's determination that these statutes do not violate the separation of powers doctrine and that Bundy's "initial right to enter the [C]apitol was revoked, due to his prior lack of compliance with conditions imposed on access." We agree with the district

26

court that Bundy failed to comply with the terms of the trespass notice by returning to the Capitol building on April 8, 2021, without contacting the State Security Manager in advance.

**G. The district court did not err when it affirmed Bundy's convictions for misdemeanor resisting and obstructing because Bundy's arrests were lawful.**

Bundy challenges his convictions for misdemeanor resisting and obstructing. We discuss those arguments next. As we noted at the outset, Bundy did not preserve his challenge to his conviction for resisting and obstructing an officer in Docket No. 50715; however, his arguments related to his conviction are identical to those made in Docket No. 50333. Bundy argues that his arrest was unlawful, based on his as-applied challenges to the criminal trespass statute, and by extension, the trespass notice. The district court affirmed his conviction for misdemeanor resisting and obstructing in both cases after it determined that Bundy's underlying arrest for criminal trespass was lawful. As a result, the district court noted that Bundy "did not have the right to resist, delay or obstruct the lawful action of a public officer, regardless of whether that resistance was passive." Bundy conceded on intermediate appeal that "a lawful arrest is part of an officer's official duties," and the district court determined it was "apparent" that Bundy knew the arresting officer was a law enforcement officer.

Generally, passive resistance is only a defense to a charge of resisting and obstructing when the defendant can show that the public officer's actions were *unlawful*. *See State v. Bishop*, 146 Idaho 804, 817, 203 P.3d 1203, 1216 (2009). In this case, the convictions for misdemeanor resisting and obstructing were supported by substantial and competent evidence. Sergeant Blake Higley testified regarding Bundy's arrest in the Lincoln Auditorium. He testified that the Speaker and the Pro Tem each have control over the Lincoln Auditorium, and that the Speaker ordered the Lincoln Auditorium to be cleared after the meeting was moved to a different room in the Capitol building. Sergent Higley testified that Bundy remained in the auditorium after the Speaker ordered the troopers to "clear the room." Bundy "made himself dead weight," which required multiple troopers to remove him from the auditorium. The troopers had to "pick[] him up [and] put[] him in a roller desk chair to get him out of the Capitol, because he wouldn't walk." Sergeant Higley explained that Bundy delayed the troopers in clearing the room by approximately fifteen to twenty minutes. Sergeant Higley removed Bundy from the Lincoln Auditorium pursuant to a lawful order from the Speaker. House Rule 63 granted the Speaker of the House the authority to preserve order and decorum, subject to an appeal to the House, and it granted him oversight of committee meeting rooms. Along the same lines, Idaho Code section 67-1602 grants the legislature control over

portions of certain floors within the Capitol building, including the floor where the Lincoln Auditorium is located. As a result, we hold that Bundy's arrest was lawful, and that the district court did not err in affirming his conviction for resisting and obstructing.

Bundy's argument that the State failed to prove he acted aggressively when being placed under arrest is unavailing. Bundy's passive resistance required multiple officers to remove him from the Lincoln Auditorium and delayed or obstructed the troopers in carrying out their official duties. Because we hold that Bundy's arrest for criminal trespass was lawful, evidence of passive resistance is not sufficient to overturn a conviction for resisting and obstructing in Docket No. 50333.

## V. CONCLUSION

For the reasons stated herein, the district court's decisions affirming Bundy's convictions for trespass and for resisting and obstructing in Docket Nos. 50333 and 50715 are affirmed.

Chief Justice BEVAN and Justices BRODY, MOELLER and PETTY, J. Pro Tem, CONCUR.