# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36508

ZANE JACK FIELDS,

    Petitioner-Appellant,

v.

STATE OF IDAHO,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, May 2011 Term

2011 Opinion No. 53

Filed: May 25, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.  The Hon. Thomas F. Neville, District Judge.

The judgment of the district court is <u>affirmed</u>.

Bruce D. Livingston, Federal Defender Services of Idaho, Boise, argued for appellant.

L. LaMont Anderson, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Chief Justice.

This is an appeal from a judgment summarily dismissing an application for post-conviction relief based upon DNA test results and affidavits of trial witnesses.  Because the DNA test results did not establish that petitioner did not commit the offense and the affidavits cannot support a claim for post-conviction relief, we affirm the district court.

## I.  FACTS AND PROCEDURAL HISTORY

On February 11, 1988, Zane Jack Fields (Fields) stabbed 69-year-old Mary Katherine Vanderford to death while stealing about $50 from the Wishing Well Gift Shop, the store in which she was working.  Ms. Vanderford was alone in the store at the time, and there were no eye witnesses to the murder.  She bled to death due to a stab wound in her neck.  A jury found Fields guilty of felony murder, and the trial court sentenced him to death.  After he was sentenced, Fields filed an application for post-conviction relief on April 18, 1991, which the district court denied following an evidentiary hearing.  Fields appealed, and we upheld his

conviction and sentence and the denial of his application for post-conviction relief. *State v. Fields*, 127 Idaho 904, 908 P.2d 1211 (1995). We need not address the evidence presented during the trial, but it is summarized in the opinion issued on the first appeal.

Fields filed a second application for post-conviction relief. After giving notice of the intent to do so, the district court summarily dismissed the application without an evidentiary hearing. Fields appealed, and we upheld the dismissal. *Fields v. State*, 135 Idaho 286, 17 P.3d 230 (2000).

Fields filed a fourth application for post-conviction relief seeking a retroactive application of the United States Supreme Court's opinion in *Ring v. Arizona*, 536 U.S. 584 (2002). The district court dismissed that application, and we upheld the dismissal on appeal. *Fields v. State*, 149 Idaho 399, 234 P.3d 723 (2010).

This appeal involves Fields's third application for post-conviction relief, which he filed on June 27, 2002. In 2001, the legislature had amended the Uniform Post-Conviction Procedure Act, I.C. §§ 19-4901 through 19-4911, to include a claim for relief if fingerprint or DNA test results showed that the petitioner was innocent of the offense for which he or she had been convicted. Ch. 317, §§ 2 & 3, 2001 Idaho Sess. Laws 1126, 1128-30 (codified at I.C. §§ 19-4901 & 19-4902). The amendment provided that a convicted defendant could obtain "fingerprint or forensic deoxyribonucleic acid (DNA) testing on evidence that was secured in relation to the trial which resulted in his or her conviction but which was not subject to the testing that is now requested because the technology for the testing was not available at the time of trial." I.C. § 19-4902(b). Fields sought to have nineteen latent fingerprints from the murder scene compared with the Automated Fingerprint Identification System national fingerprint database and to have DNA testing of substances on his coat that had tested positive as some type of blood, of hairs found on the victim's clothing, and of scrapings taken from her fingernails.

The district court ordered that the Idaho State Police Forensic Lab DNA test the coat, but the lab found that DNA testing could not be conducted because there was insufficient genetic material. The comparison of the fingerprints produced matches to two individuals, but there was no evidence linking them to the murder.

The DNA testing determined that the hairs found on the victim's clothing did not come from Fields. There was also male DNA found in the scrapings from the victim's fingernails, but

2

it also did not come from Fields. However, there was no evidence that the hairs or the material scraped from the victim's fingernails came from her attacker.

On November 5, 2007, the State moved to dismiss Fields's petition on the ground that neither the fingerprint nor the DNA test results entitled Fields to relief. In response, Fields filed affidavits of Jeffrey L. Acheson, Betty Heaton, and Mari Munk, all of whom had testified during his trial. Mses. Heaton and Munk had been in the gift shop and had left shortly before the murder. They both testified to seeing a man in the store before they left, but at trial they did not identify Fields as being that man. Rather, they gave general descriptions of the man and his clothing, and those descriptions did not match Fields. In their affidavits, they basically recount their trial testimony and state that Fields did not look like the man they saw.

Acheson was one of four inmates who testified to incriminating statements made by Fields. In his affidavit, he stated that the other three inmates who also testified at the trial regarding incriminating statements by Fields "told me of how they had made up most of what they were saying, in order to get out of Orofino [a prison facility in north Idaho]." The district court denied Fields's application for post-conviction relief, and Fields appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in summarily dismissing Fields's post-conviction claim based upon Idaho Code § 19-4901(a)(6)?
2. Did the district court err in summarily dismissing Fields's post-conviction claim in spite of the three witness affidavits?

## III. ANALYSIS

In its analysis, the district court began by stating, "When an innocence claim arises from new, reliable evidence, 'holistic judgment about "all the evidence" ' is required." (Quoting from *House v. Bell*, 547 U.S. 518, 540 (2006).) The court then stated, "The United States Supreme Court has ruled that when considering a claim of innocence based on newly discovered evidence, the court should examine whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" (Quoting from *Schlup v. Delo*, 513 U.S. 298, 327 (1995).) The court held, "After examining all the admissible evidence in this case, this Court concludes that it is not 'more probable than not' that Petitioner is not guilty of the

3

crime for which he has been convicted." The court erred in relying upon the *House* and *Schlup* cases and in applying the quotations from those opinions to this proceeding because neither of those cases has any application here.

Schlup had filed a successive petition in federal district court for a writ of habeas corpus. He contended that "the ineffectiveness of his counsel and the withholding of evidence by the prosecution denied him the full panoply of protections afforded to criminal defendants by the Constitution." 513 U.S. at 314 (citations omitted). His claim of innocence was procedural, not substantive. *Id.* It was a gateway through which a federal habeas petitioner must pass in order to have an otherwise procedurally barred constitutional claim considered on the merits. *Id.* at 315. The Supreme Court held that "when a petitioner who has been sentenced to death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claims[,] . . . the habeas petitioner [is required] to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* at 326-27 (quoting from *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The Court then stated, "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

*House*, like *Schlup*, simply dealt with the gateway standard for obtaining federal habeas review of a procedurally defaulted constitutional claim. The Supreme Court concluded, "House has satisfied the gateway standard set forth in *Schlup* and may proceed on remand with procedurally defaulted constitutional claims." 547 U.S. at 555. The Court's statement about reviewing all of the evidence referred only to that gateway inquiry. It stated, "Yet the *Schlup* inquiry, we repeat, requires a holistic judgment about ' "all the evidence," ' " *Id.* at 539.

In *House*, the Court made it clear that it was not addressing a freestanding actual innocence claim. The Court stated:

> House urges the Court to answer the question left open in *Herrera* [*v. Collins*, 506 U.S. 390 (1993)] and hold not only that freestanding innocence claims are possible but also that he has established one.
>
> We decline to resolve this issue. We conclude here, much as in *Herrera*, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it.

*Id.* at 554-55. Thus, House's evidence satisfied the gateway standard to have his procedurally defaulted constitutional claims heard, but it would not have satisfied the burden of establishing a freestanding innocence claim if one existed.

The Supreme Court in *Schlup* and in *House* was addressing the showing required for a federal habeas petitioner to avoid a procedural bar to the consideration of his constitutional claims. The Court was not setting forth a requirement applicable to state claims for post-conviction relief. Neither case has any application to these proceedings, and the district court erred in relying upon them. However, "[w]here the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

**A. Did the District Court Err in Summarily Dismissing Fields's Post-Conviction Claim Based upon Idaho Code § 19-4901(a)(6)?**

Idaho Code § 19-4901(a) lists the types of claims for which post-conviction relief can be granted. Subsection (6) authorizes a limited actual-innocence claim based upon fingerprint or forensic DNA test results that establish innocence. It applies when the petitioner claims, "[s]ubject to the provisions of section 19-4902(b) through (g), Idaho Code, that the petitioner is innocent of the offense." I.C. § 19-4901(a)(6).

What the petitioner must prove in order to establish that claim is set forth in Idaho Code § 19-4902(f), which provides, "In the event the fingerprint or forensic DNA test results demonstrate, in light of all admissible evidence, that the petitioner is not the person who committed the offense, the court shall order the appropriate relief." Under the plain wording of the statute, the forensic DNA test results must demonstrate that the petitioner is not the person who committed the offense. The petitioner has the burden of establishing that claim by a preponderance of the evidence. *McCoy v. State*, 129 Idaho 70, 72-73, 921 P.2d 1194, 1196-97 (1996).

The first issue to be addressed is what evidence the trial court must consider in deciding whether Fields presented sufficient evidence to meet that burden. Fields points to the wording "in light of all admissible evidence" and argues that the district court was required to consider the DNA test results together with all of the admissible evidence, including the affidavits submitted in the post-conviction proceedings, even if they contain matters that are cumulative or

5

impeaching. In essence, Fields contends that presenting DNA test results requires the district court to review all of the evidence admitted at trial and submitted in post-conviction proceedings and then to determine whether the court believes Fields is probably innocent. That argument is contrary to the provisions of Idaho Code § 19-2719, which also apply in this case.

Section 19-2719 sets forth special appellate and post-conviction procedures applicable in capital cases. When Idaho Code §§ 19-4901 and 19-4902 were amended to provide for a limited actual innocence claim based upon fingerprint or DNA test results, section 19-2719(4) was also amended. Ch. 317, § 1, 2001 Idaho Sess. Laws 1126, 1127-28. That amendment stated, "The special procedures for fingerprint or forensic DNA testing set forth in sections 19-4901(a)(6) and 19-4902(b) through (f), Idaho Code, are fully applicable in capital cases and *are subject to the procedures set forth in this section . . . .*" *Id*. at 1127 (emphasis added).

Those procedures required that within forty-two days after the judgment imposing the punishment of death, "the defendant must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known." I.C. § 19-2719(3). If the defendant fails to apply for relief within the applicable time limits, "he shall be deemed to have waived such claims for relief as were known, or reasonably should have been known." I.C. § 19-2719(5). To have a claim in a successive post-conviction petition heard, the defendant must show that he or she did not know and reasonably could not have known of the claim within those time limits. I.C. § 19-2719(5). A successive post-conviction proceeding asserting that exception "shall be deemed facially insufficient to the extent it alleges matters that are cumulative or impeaching or would not, even if the allegations were true, cast doubt on the reliability of the conviction or sentence." I.C. § 19-2719(5)(b). Thus, interpreting the words "in light of all admissible evidence" to include matters that are cumulative or impeaching would conflict with the limitations of section 19-2719(5)(b).

Fields argues that "Section 19-2719(5) only bars *claims*, not supporting facts." (Emphasis in original.) That assertion is contrary to our holding in *Pizzuto v. State*, 134 Idaho 793, 797, 10 P.3d 742, 746 (2000) (footnote omitted), where, after quoting Idaho Code § 19-2719(5), we stated:

> The elements of evidence which Pizzuto claims were wrongfully withheld are all of an impeaching nature. None of the "newly discovered" evidence tends to show that Pizzuto was not involved in the crime, but could have been used only to attack the reliability of the testimony given by Pizzuto's co-defendants. . . . the

6

statute governing post-conviction relief procedure states that a successive post-conviction pleading "shall be deemed facially insufficient to the extent it alleges matters that are cumulative or impeaching." I.C. § 19-2719(5)(b). Since the withheld information of which Pizzuto complains in this successive petition would have been used only to impeach the testimony of Rice and Odom, we affirm the district court's dismissal of the third amended petition for post-conviction relief.

Fields's argument that all evidence must be considered would also conflict with the requirement in section 19-2719 that claims for relief that were known, or reasonably should have been known, are waived if they are not brought within the time limits set forth in that section.

Because a claim of innocence based upon fingerprint or DNA test results is subject to the procedures set forth in section 19-2719, I.C. § 19-2719(4), the words "in light of" cannot reasonably be construed as conflicting with those procedures. If Idaho Code § 19-4902(f) was intended to be a means of circumventing the restrictions of subsection (5) of Idaho Code § 19-2719, then subsection (4) of that code section would not have been amended to provide that "[t]he special procedures for fingerprint or forensic DNA testing set forth in sections 19-4901(a)(6) and 19-4902(b) through (g), Idaho Code, are fully applicable in capital cases and are subject to the procedures set forth in this section . . . ."

The words "in light of" simply mean "taking into account; because of; considering." *Dictionary.com Unabridged.* Random House, Inc. http://dictionary.reference.com/browse/in light of (accessed: May 02, 2011). The reference to "in light of all admissible evidence" does not mean "together with all other admissible evidence." It is simply a realization that the test results by themselves will never show that the petitioner is not the person who committed the offense. For example, in this case the DNA test results do not show who was the source of the biological material tested. In order to prove that the DNA test results demonstrate that the petitioner is not the person who committed the offense, there will have to be admissible evidence showing that the material tested came from the person who committed the crime. Under Idaho Code § 19-4902(f), it is the fingerprint or DNA test results that must demonstrate that the petitioner is not the person who committed the offense. In this case there would have to be admissible evidence showing that the hairs or fingernail scrapings tested came from the murderer. Without such admissible evidence, the test results could not show that Fields was not the murderer.

Fields argues that we should assume that the fingernail scrapings came from the murderer based upon the testimony of the pathologist that the victim had a cut on the top of the ring finger

of her left hand that appeared to be a defensive wound. At Fields's murder trial, the pathologist testified that the victim had a wound "on the top of the ring finger of the left hand"; that it was a linear injury, "so it could [have been] caused by a sharp instrument such as a knife"; that he did not recall its dimensions; and that he described it as a "defense wound" because "[s]ometimes when people are being attacked they put their hands up to defend themselves, and this appeared to be consistent with a defense wound." However, there is no evidence that the victim scratched or even touched her attacker with her hands. There is not even any evidence that she struggled with her attacker.

Fields argues that he is entitled to the inference that the victim scratched her attacker because the attacker was close enough to stab her multiple times, because she apparently raised her hand to ward off the attack, and because she was still alive when she was discovered by a customer coming into the store. He contends that he was entitled to have the evidence viewed in the light most favorable to him because this was a summary dismissal of his claim.

When there is a motion for summary dismissal of an application for post-conviction relief, the court must review the facts in a light most favorable to the petitioner. *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010). However, to prevent summary dismissal the petitioner must present evidence establishing a prima facie case as to each element of the claims upon which the petitioner bears the burden of proof. *Pizzuto v. State*, 146 Idaho 720, 728, 202 P.3d 642, 650 (2008). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact precluding summary dismissal. *Id*. at 733, 202 P.3d at 655. "The application must be supported by written statements from competent witnesses or other verifiable information. Unsubstantiated and conclusory allegations are insufficient to entitle a petitioner to an evidentiary hearing." *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010). (Citations omitted).

In this case, there was nothing but speculation supporting the claim that the scrapings from the victim's fingernails or the hairs from her clothing came from her attacker. We therefore uphold the dismissal of Fields's claim based upon Idaho Code § 19-4901(a)(6) because the DNA test results, in light of all admissible evidence, do not demonstrate that Fields is not the person who committed the murder.

**B. Did the District Court Err in Summarily Dismissing Fields's Claim in Spite of the Three Witness Affidavits?**

In response to the State's motion to dismiss, Fields filed three affidavits. Two of the affidavits were from Betty Heaton and Mari Munk, who had been in the gift shop and had left shortly before the murder. At Fields's murder trial, they both testified to seeing a man in the store before they left, but they did not identify Fields as being that man. They gave general descriptions of the man and his clothing, and those descriptions did not match Fields. In their affidavits, they basically recount their trial testimony and state that Fields did not look like the man they saw. The only material difference between their trial testimony and the statements in their affidavits is that Fields did not look like the man they saw.

The third affidavit was from Jeffrey L. Acheson, one of four inmates who testified regarding incriminating statements made by Fields while he was incarcerated pending the murder trial. In his affidavit, he stated, "Also, the other state witnesses, Howie G., Joe H. and Scott Bianchi [the other three inmates] told me of how they had made up most of what they were saying, in order to get out of Orofino." In addition, he stated, "I can tell you that I'd not have testified against Zane without the information given to me by the police, prosecutors & other witnesses."

Idaho Code § 19-4901(a) (4) provides a claim for post-conviction relief when "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." Fields did not allege in his application for post-conviction relief that he was making a claim based upon newly discovered evidence. Likewise, he did not argue to the district court that he was making a claim under section 19-4901(a)(4) based upon newly discovered evidence. Finally, he did not make such claim on appeal. He simply argued that such affidavits and the DNA test results established a claim of innocence under section 19-4901(a)(6). Such affidavits are not relevant to prove that the DNA test results demonstrate that Fields is not the person who committed the murder. They do not show that the fingernail scrapings or the hairs came from the murderer. Therefore, those affidavits do not create a genuine issue of material fact with respect to Fields's claim under Idaho Code § 19-4901(6) that the DNA test results demonstrate that he is not the person who committed the murder.

9

In addition, the affidavits could not support a claim for post-conviction relief, based upon the assertion that they contained newly discovered evidence. The judgment imposing Fields's death sentence was filed in March 1991. Within forty-two days of the filing of the judgment, he was required to file any factual challenge to his conviction that was known or reasonably should have been known. I.C. § 19-2719(3). There is an exception for claims that were not and could not have been known within that time period, but Fields was required to bring those claims within a reasonable time after they were known or should have been known. *Pizzuto v. State*, 134 Idaho 793, 798, 10 P.3d 742, 747 (2000). Claims not raised within that reasonable time are deemed waived. *Stuart v. State*, 149 Idaho 35, 41, 232 P.3d 813, 819 (2010). In order for a claim filed after the forty-two-day time limit to be heard, Fields was required to make a prima facie showing that the issues raised in his application for post-conviction relief fit within the exception to the time limit. *Pizzuto v. State*, 127 Idaho 469, 471, 903 P.2d 58, 60 (1995). To do so, he had the burden of alleging facts showing when his claim was known or reasonably should have been known. *Stuart,* 149 Idaho at 42, 232 P.3d at 820. In addition, "[a] successive post-conviction pleading asserting the exception shall be deemed facially insufficient to the extent it alleges matters that are cumulative or impeaching . . . ." I.C. § 19-2719(5)(b).

The statements in the affidavits of the two women are merely cumulative, restating their testimony during the murder trial. Although in their affidavits they add the statement that the man they saw in the gift shop was not Fields, that merely summarizes their trial testimony because their descriptions of the man they saw clearly did not match Fields. Fields cannot base a claim of post-conviction relief upon evidence that is merely cumulative. I.C. § 19-2719(5)(b).

The Acheson affidavit likewise would not support a claim for post-conviction relief. The statements at issue in the affidavit attempt to impeach the testimony of the other three inmates and, inferentially, Acheson's testimony. Statements that are merely impeaching cannot support a successive application for post-conviction relief. During oral argument, Fields's counsel asserted that Acheson's statement was admissible under *State v. Harris*, 132 Idaho 843, 979 P.2d 1201 (1999). That case did not involve an application for post-conviction relief. It was a direct appeal challenging the trial court's exclusion of a witness's testimony as a sanction for failing to disclose the witness prior to trial. We held that the trial court had abused its discretion because it had not weighed any prejudice that might be suffered by the State against the defendant's right to a fair trial. The State argued that the exclusion was harmless because it was merely cumulative.

10

We held it was not cumulative because it went directly to the credibility of the complaining witness and reasonably could have affected the outcome of the case. *State v. Harris* has no application here. Fields cannot base a successive claim for post-conviction relief upon evidence that is merely impeaching. *Pizzuto v. State*, 134 Idaho 793, 797, 10 P.3d 742, 746 (2000); I.C. § 19-2719(5)(b).

Finally, there is nothing in the record indicating when any new facts in the affidavits supporting his claim were known or reasonably should have been known. It was Fields's burden to allege facts showing that he fits within the exception to Idaho Code § 19-2719. *Stuart v. State*, 149 Idaho 35, 42, 232 P.3d 813, 820 (2010); *Lankford v. State*, 127 Idaho 100, 101, 897 P.2d 991, 992 (1995).

## IV. CONCLUSION

We affirm the judgment of the district court.


Justices BURDICK, J. JONES, W. JONES, and J. Pro Tem TROUT **CONCUR**.