# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52130

| | | |
|---|---|---|
| AZAD HAJI ABDULLAH, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, January 2026 Term |
| | ) | |
| v. | ) | Opinion Filed: March 2, 2026 |
| | ) | |
| STATE OF IDAHO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Jason D. Scott, District Judge.

The judgment of the district court is <u>affirmed</u>.

Silvey Law Office Ltd., Boise, and Federal Community Defender Office, *Pro Hac Vice*, Philadelphia, Pennsylvania, for Appellant Azad Haji Abdullah. Greg S. Silvey submitted argument on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent State of Idaho. L. LaMont Anderson submitted argument on the briefs.

---

MEYER, Justice.

This is an appeal from the summary dismissal of Azad Haji Abdullah's third successive petition for post-conviction relief. Abdullah was sentenced to death in 2004 for murdering his wife, Angela Abdullah ("Angie"), and given consecutive prison sentences for first-degree arson, three counts of attempted first-degree murder, and felony injury to a child. Abdullah's third successive petition for post-conviction relief, filed the better part of two decades after Abdullah was sentenced, raised numerous ineffective assistance of counsel claims under various theories. The district court dismissed Abdullah's petition as untimely under Idaho Code section 19-2719, which requires capital defendants to submit claims for post-conviction relief "[w]ithin forty-two (42) days of the filing of the judgment imposing the punishment of death" for "any legal or factual challenge to the sentence or conviction that is known or reasonably should be known." I.C. § 19-2719(3).

On appeal, Abdullah advances three arguments for his contention that the district court erred when it determined that his claims were time barred. First, he urges this Court to reconsider our decisions in *Fields v. State*, 151 Idaho 18, 253 P.3d 692 (2011), and *Hooley v. State*, 172 Idaho 906, 537 P.3d 1267 (2023), and recognize an "actual innocence" exception to the 42-day limitation period set forth in section 19-2719(3). Second, he argues that section 19-2719 violates his right to equal protection of the law under both the United States Constitution and the Idaho Constitution. Third, he argues that section 19-2719 violates the Idaho Constitution's separation of powers provisions because section 19-2719 limits the constitutionally defined jurisdiction of the district court. For the reasons set forth below, we affirm the district court's dismissal of his third successive petition for post-conviction relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Like most death penalty cases, the factual and procedural history associated with this case is extensive. "Concisely stated, 'Abdullah murdered his wife [Angie] in their home and then set fire to the home with two of the children . . . and a young friend . . . asleep inside and one of their children . . . in the backyard.'" *Abdullah v. State* (*Abdullah II*), 169 Idaho 711, 718, 503 P.3d 182, 189 (2021) (first alteration in original) (quoting *State v. Abdullah* (*Abdullah I*), 158 Idaho 386, 405, 348 P.3d 1, 20 (2015)).

"The day before the crimes, October 4, 2002, Angie's daughter from a previous marriage had a friend spend the night at the Abdullah home." *Abdullah v. State* (*Abdullah III*), 173 Idaho 127, 132, 539 P.3d 947, 952 (2023) (citation omitted). "Later that night, Angie asked her daughter and the friend to lock the doors to the Abdullah home." *Id.* "Shortly before 1:54 a.m. on October 5, the daughter's friend woke up because she felt heat, and then saw 'fire everywhere.'" *Id.* (citation omitted). "The daughter and her friend narrowly escaped from the burning home through the garage." *Id.* "Before firefighters could arrive at the scene, a neighbor, after being woken by the daughter and her friend, ran into the burning Abdullah home, kicked down the locked master bedroom door, and rescued Abdullah's and Angie's three-week-old son found crying on the bed." *Id.* "After the firefighters arrived, they found Abdullah's and Angie's eighteen-month-old son in the backyard of the burning home, sitting on a large comforter from the master bedroom." *Id.* "He was not covered in soot, did not smell like smoke, and did not show any signs of having been in a fire." *Id.* Firefighters subsequently found Angie's body in the Abdullah home. *Id.* at 133, 539 P.3d at 953. "Angie had no clothing on except a sports bra, was face down with her backside up in the

2

air, and had a plastic bag over her head which covered her face." *Id.* "The firefighters also found the front door open with no signs of forced entry, even though the daughter and her friend had checked the lock before they went to bed." *Id.* at 132–33, 539 P.3d at 952–53.

Over the course of the trial spanning roughly two months, the State presented physical evidence and testimony demonstrating Abdullah's guilt. This included, among other things, evidence that:

- "Angie had died before the fire from acute fluoxetine poisoning associated with asphyxiation due to a bag over the head";

- "the fire was intentionally set by pouring gasoline in the garage, living room, and southwest bedroom of the Abdullah home";

- the day before the crimes, Abdullah purchased seventeen gallons of gasoline at a Chevron station in Boise, Idaho, and five gallons of gasoline for a gas can. Later that same day, he drove to Salt Lake City, Utah, where he purchased twenty-two and a half gallons of gasoline from a 7-Eleven station;

- a gas can discovered at the Abdullah home contained the same additive as the gasoline purchased in Salt Lake City;

- while in Salt Lake City, he also "purchased an adult black cape and mask from a Halloween store even though the Abdullah family did not observe Halloween for religious reasons";

- hair samples collected from Abdullah's arms showed "exposure to high heat";

- "the plastic bag over Angie's head . . . match[ed] bags from India Emporium—a store Abdullah had shopped at and received a similar plastic bag from only three days earlier";

- after learning law enforcement was investigating him, Abdullah contacted two individuals and requested that they purchase two gas cans, fill them with gas, and place them in Abdullah's van" (both of whom rejected this request);

- "[l]ess than two months before the crimes occurred, Abdullah purchased a [fire] insurance policy to cover vending machines . . . , which were stored in the garage of their home";

- "leading up to the underlying murder, Abdullah and Angie had a 'troubled' marriage . . . , which resulted in Angie contemplating divorce"; and

- Abdullah told a co-worker "it was acceptable to kill one's wife or to have the wife killed in his culture if she cheated on the husband."

*Id.* at 132–33, 539 P.3d at 952–53 (internal citations omitted).

3

"At trial, Abdullah's counsel advanced a theory that based on the levels of fluoxetine found in Angie's blood and gastric contents, she had committed suicide on either October 4 or 5, 2002." *Id.* at 133, 539 P.3d at 953. "However, in the State's rebuttal case, a forensic psychologist opined that there was a very low probability Angie committed suicide." *Id.* "Similarly, Angie's therapist testified that Angie 'never talked about suicide and would never have committed suicide because Angie's last husband,' the father of the daughter, had committed suicide." *Id.* (citation omitted). "Earlier, a forensic pathologist who performed the autopsy also testified that he had ruled out suicide based on, among other things, the positioning of Angie's body." *Id.*

Abdullah was subsequently convicted and sentenced to death for the first-degree murder "and given consecutive sentences totaling eighty years in prison for first-degree arson, three counts of attempted first-degree murder, and felony injury to a child." *Id.* at 131, 539 P.3d at 951. "[D]uring the guilt phase, the jury found beyond a reasonable doubt that 'Abdullah premeditated the murder of his wife, placed a bag over her head to asphyxiate her, poured gasoline throughout their home, and left three children inside a home engulfed in flames to cover up his actions.' " *Id.* (quoting *Abdullah I*, 158 Idaho at 495, 348 P.3d at 110). "During the penalty phase, the same jury found the existence of aggravating circumstances, and . . . found that all mitigating circumstances were not sufficiently compelling that the death penalty would be unjust." *Id.* (citation modified).

Over the next 17 years, Abdullah filed a direct appeal and three petitions for post-conviction relief (the original petition and two successive petitions), all of which failed to overturn his conviction and sentence. *See Abdullah I*, 158 Idaho at 530, 348 P.3d at 145 (affirming Abdullah's judgment and conviction on direct appeal and the judgment dismissing Abdullah's petition for post-conviction relief); *Abdullah II*, 169 Idaho at 730, 503 P.3d at 201 (affirming the district court's order summarily dismissing Abdullah's first successive petition for post-conviction relief); *Abdullah III*, 173 Idaho at 149, 539 P.3d at 969 (affirming the district court's order summarily dismissing Abdullah's second successive petition for post-conviction relief).

Relevant to this case, in 2012, the United States Supreme Court issued its decision in *Martinez v. Ryan*, holding that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. 1, 17 (2012). Thereafter, the Ninth Circuit issued *Dickens v. Ryan*, which held that an inadequately supported claim, decided on the merits by a state court, could become a new procedurally defaulted claim in federal court if the petitioner provided new evidence that changed the factual basis of the claim such that it resulted in a "fundamentally altered" claim. *See* 740 F.3d 1302, 1320–22 (9th Cir. 2014) (en banc), *abrogated by*, *Shinn v. Ramirez*, 596 U.S. 366 (2022), *as recognized in Hampton v. Shinn*, 143 F.4th 1047 (9th Cir. 2025). However, in 2022, the Supreme Court issued its opinion in *Shinn v. Ramirez*, which held that federal courts generally could not consider new evidence for the purposes of a *Martinez* claim and were instead bound by the evidence introduced in prior state court proceedings. 596 U.S. at 380–82. The Supreme Court held that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond [what was produced in state court] based on ineffective assistance of state postconviction counsel." *Id.* at 382.

In response to *Shinn*, Abdullah filed his fourth (i.e., third successive) petition for post-conviction relief on June 30, 2022. Abdullah argued that *Shinn* was a "triggering event for a new postconviction proceeding." Abdullah argued that this was because he had relied on prior Ninth Circuit caselaw for "roughly a decade" as a basis for his understanding that he could develop factual claims in federal court (which had otherwise been procedurally defaulted in state court because the statute of limitations had run on presenting a post-conviction petition), but *Shinn* "abruptly destroyed that assumption." His petition advanced numerous claims of ineffective assistance of counsel including, *inter alia*, that his trial counsel and post-conviction counsel failed to: (1) adequately investigate and present evidence that Angie died from suicide rather than murder, (2) adequately investigate the evidence of arson inside the Abdullah home, and (3) adequately investigate and present evidence that someone other than Abdullah was responsible for Angie's death and the fire at the Abdullah home. Abdullah attached various documents to his petition to support these claims.

In response, the State filed a motion for summary dismissal, arguing that Abdullah's third successive petition was time-barred by Idaho Code section 19-2719. While the motion for summary dismissal was pending, on August 2, 2023, this Court stayed the district court proceedings to resolve a dispute between the Idaho State Appellate Public Defender ("SAPD") and the district court concerning Abdullah's legal representation. *See Idaho State App. Pub. Def. v. Fourth Jud. Dist. Ct.*, 173 Idaho 214, 540 P.3d 311 (2023). On December 18, 2023, we granted

5

the SAPD's petition for writ of mandamus and ordered the SAPD to arrange for a substitution of counsel and that a new district court judge be assigned to preside over Abdullah's post-conviction proceeding. *Id.* at 233, 540 P.3d at 330.

In February 2024, this Court issued its decisions in *Creech v. State* (*Creech I*), 173 Idaho 464, 543 P.3d 494 (2024), and *Creech v. State* (*Creech II*), 173 Idaho 470, 543 P.3d 500 (2024).[1] In *Creech I*, we concluded that the Supreme Court's holding in *Shinn* was not a "triggering event" that restarted the 42-day limitations period set forth in section 19-2719. 173 Idaho at 468–69, 543 P.3d at 498–99. In *Creech II*, we affirmed a district court's decision to dismiss a capital defendant's successive petition for post-conviction relief *sua sponte*, holding that a district court "has no choice but to summarily dismiss" a petition for post-conviction relief if the court determined the petition is untimely under section 19-2719. 173 Idaho at 475, 543 P.3d at 505.

In response to *Creech I* and *Creech II*, Abdullah filed a motion to amend his third successive petition to advance three new theories concerning the timeliness of his claims. First, citing to *Schlup v. Delo*, 513 U.S. 298 (1995), Abdullah argued that his alleged "actual innocence" permitted his otherwise untimely post-conviction claims to be considered on their merits. While recognizing that this Court had previously refused to adopt "a *Schlup* exception" to the time limits governing post-conviction relief in noncapital cases, *see Hooley v. State*, 172 Idaho 906, 914–15, 537 P.3d 1267, 1275–76 (2023), Abdullah contended that the death penalty's unique severity warranted "especially reliable procedures" and, following *Creech I*, a prisoner whose meritorious claims were defaulted by ineffective postconviction counsel were "now barred from receiving an evidentiary hearing in both state *and* federal court." Second, he argued that our holding in *Creech I* violated equal protection principles as between Abdullah and pre-*Shinn* prisoners who were provided a judicial forum to present otherwise untimely claims of trial counsel's ineffective assistance. Third, he claimed that our holding in *Creech II* interpreted section 19-2719's limitation period as a jurisdictional bar and, therefore, "the statute unconstitutionally infringe[d] upon the

---

[1] We note that there are seven other reported cases concerning Thomas Eugene Creech following his conviction and sentence to death for first-degree murder after pleading guilty in 1981. *See State v. Creech*, 99 Idaho 779, 589 P.2d 114 (1979); *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983); *State v. Creech*, 109 Idaho 592, 710 P.2d 502 (1985); *State v. Creech*, 132 Idaho 1, 966 P.2d 1 (1998); *Creech v. State*, 137 Idaho 573, 51 P.3d 387 (2002); *Creech v. State*, 174 Idaho 578, 558 P.3d 723 (2024); *Creech v. Valley*, 174 Idaho 853, 560 P.3d 1000 (2024). But for the purposes of this appeal, since only these two February 2024 *Creech* cases are referenced, we will adopt the numbering convention of Abdullah and refer to them as *Creech I* and *II*.

judiciary's power." In response, the State filed an objection to the motion to amend and a supplemental motion to dismiss, which addressed each of these new theories.

Following a hearing, the district court granted the State's supplemental motion to dismiss and denied Abdullah's motion for leave to amend. The court determined that Abdullah's argument for an actual innocence exception to section 19-2719 was "squarely foreclosed by controlling precedent[,]" and Abdullah's equal protection argument failed because Abdullah could not establish that he was similarly situated to capital defendants in other states with different post-conviction laws. The court further rejected Abdullah's claim that section 19-2719 unconstitutionally infringed on the judiciary's power to hear cases. Abdullah then appealed to this Court.

## II. ISSUES ON APPEAL

1. Is there an actual-innocence exception to the forty-two day period to bring post-conviction claims under Idaho Code section 19-2719?

2. Does Idaho Code section 19-2719 violate the equal protection provisions of the United States Constitution?

3. Does Idaho Code section 19-2719 violate the Idaho Constitution's separation of powers provisions?

## III. STANDARDS OF REVIEW

"'Whether a successive petition for post-conviction relief was properly dismissed pursuant to Idaho Code section 19-2719 is a question of law,' which this Court reviews de novo." *Row v. State*, ___ Idaho ___, ___, 575 P.3d 887, 894 (2025) (alteration omitted) (quoting *Dunlap v. State*, 159 Idaho 280, 292, 360 P.3d 289, 301 (2015)). "If a petition for post-conviction relief is untimely sought under Idaho Code section 19-2719, then it must be dismissed summarily." *Id.* (citation modified).

"The constitutionality of statutes is a question of law." *State v. Bundy*, 175 Idaho 448, ___, 566 P.3d 445, 456 (2025) (citation omitted). "When this Court considers a claim that a statute is unconstitutional, we review the trial court's ruling *de novo* since it involves purely a question of law." *Id.* (citation omitted). "The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and must overcome a strong presumption of validity." *Id.* (citation modified). "Further, an appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." *Id.* (citation modified).

7

## IV. ANALYSIS

On appeal, Abdullah maintains that the district court erred when it determined that his claims were time barred. "[T]his case implicates the special appellate and post-conviction procedures governing capital cases set forth in Idaho Code section 19-2719." *Row v. State*, ___ Idaho ___, ___, 575 P.3d 887, 894 (2025) (citation omitted). We briefly explain these procedures before proceeding to address the merits of Abdullah's arguments.

"An application for post-conviction relief is a special proceeding, civil in nature, and is an entirely new proceeding, distinct from the criminal action which led to the conviction." *State v. Beam*, 115 Idaho 208, 210, 766 P.2d 678, 680 (1988). "Generally, the Uniform Post-Conviction Procedure Act ('UPCPA'), I.C. §§ 19-4901 to 19-4911, governs post-conviction proceedings." *Abdullah III*, 173 Idaho 127, 138, 539 P.3d 947, 958 (2023) (citing *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010)). The statute of limitations in a non-capital case requires that a post-conviction petition be filed within one year "from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." I.C. § 19-4902(a).

"However, in capital cases, Idaho Code section 19-2719 modifies and supersedes the UPCPA to the extent that their provisions conflict." *Row*, ___ Idaho at ___, 575 P.3d at 894 (citation modified). "[S]ection 19-2719 provides special procedures to eliminate unnecessary delay in carrying out a valid death sentence and requires that any remedy available by post-conviction procedure, habeas corpus or any other provision of state law must be pursued according to the procedures and time limitations it provides." *Id.* (citation modified). "The underlying legislative purpose behind the statute stated the need to expeditiously conclude criminal proceedings and recognized the use of dilatory tactics by those sentenced to death to 'thwart their sentences.'" *Beam*, 115 Idaho at 213, 766 P.2d at 683.

In capital cases, pursuant to section 19-2719(3), a defendant must file "'any legal or factual challenge to the sentence or conviction that is known or reasonably should be known' within forty-two days 'of the filing of the judgment imposing the punishment of death, and before the death warrant is filed[.]'" *Abdullah III*, 173 Idaho at 138, 539 P.3d at 958 (quoting I.C. § 19-2719(3)). Critically, "[t]he failure to do so constitutes a waiver of those claims." *Row*, ___ Idaho at ___, 575 P.3d at 894–95 (alteration in original) (quoting *Row v. State*, 135 Idaho 573, 576, 21 P.3d 895, 898

8

(2001)). "This Court has strictly construed the waiver provision of Idaho Code section 19-2719." *Id.* (alteration omitted) (quoting *McKinney v. State*, 133 Idaho 695, 701, 992 P.2d 144, 150 (1999)).

However, section 19-2719(5) contains one "narrow exception to the waiver provision for 'unusual cases.'" *Abdullah III*, 173 Idaho at 138, 539 P.3d at 958 (quoting *State v. Rhoades*, 120 Idaho 795, 807, 820 P.2d 665, 677 (1991)). "This narrow exception, however, places a heightened burden on the petitioner in a successive petition case to make a prima facie showing that the 'issues' raised in it 'were not known or *could not reasonably have been known*'" within the 42-day window for filing a challenge to the sentence or conviction in a capital case. *Id.* (quoting I.C. § 19-2719(5)(a); then citing *Fields v. State*, 154 Idaho 347, 349–50, 298 P.3d 241, 243–44 (2013); and then citing *Pizzuto*, 149 Idaho at 160, 233 P.3d at 91). "This Court has repeatedly held that [Idaho Code section] 19-2719 requires the dismissal of successive petitions for post-conviction relief which fail to qualify for the narrow exception set forth in [section] 19-2719(5)." *Id.* (quoting *Pizzuto v. State*, 134 Idaho 793, 797, 10 P.3d 742, 746 (2000)); *Creech I*, 173 Idaho 464, 467–68, 543 P.3d 494, 497–98 (2024).

In this case, Abdullah does not contend that his claims qualify for the narrow exception set forth in section 19-2719(5). Instead, he urges the Court to reconsider our decisions in *Fields v. State*, 151 Idaho 18, 253 P.3d 692 (2011), and *Hooley v. State*, 172 Idaho 906, 537 P.3d 1267 (2023), and create, by judicial fiat, an "actual innocence" exception to the 42-day limitation period set forth in section 19-2719(3). He also maintains, as he did below, that section 19-2719 violates his constitutional right to equal protection of the law and "the separation of powers guaranteed by" Article II, section 1, of the Idaho Constitution. We address each argument in turn.

### A. We decline to overrule our holdings in *Fields* and *Hooley* because Abdullah failed to demonstrate they are manifestly wrong.

Abdullah argues that this Court should recognize an actual-innocence exception to section 19-2719's statutory bar so that courts may review defaulted post-conviction claims brought by death-sentenced prisoners who are likely able to prove their innocence. He claims that the failure to consider the merits of his petition would result in a fundamental miscarriage of justice because he is innocent. Abdullah maintains that he "can establish that Angie Abdullah died from suicide and that [Abdullah] did not set fire to the interior of the house or otherwise take action to kill his wife." To support his argument, he cites *Schlup v. Delo*, 513 U.S. 298 (1995), for the proposition that his alleged "innocence allows this Court, and the court below, to consider and grant relief on

9

the merits of his otherwise untimely claims." The State argues that the district court properly concluded that Abdullah's argument was foreclosed by controlling precedent.

In *Schlup*, the United States Supreme Court held that a procedurally-barred habeas corpus petition alleging a constitutional violation could be litigated if the petitioner provided new reliable evidence and could "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." 513 U.S. at 322–27. The Supreme Court explained that a *Schlup*-type actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)) (remaining citation omitted). The Supreme Court further explained that this "gateway" is available when "a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Id.* at 315–16. Under *Schlup*, if the petitioner makes a "threshold showing" that he or she is actually innocent of the crime, the court may then consider whether the otherwise procedurally barred constitutional claim entitles the petitioner to federal habeas relief. *Id.* at 317. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup* 513 U.S. at 327).

This Court, however, has repeatedly held that *Schlup* has no application to post-conviction proceedings in Idaho. *Fields*, 151 Idaho at 21–22, 253 P.3d at 695–96; *Hooley*, 172 Idaho at 915–16, 537 P.3d at 1276–77. In *Fields*, a district court dismissed a capital defendant's free-standing innocence claim that was brought pursuant to Idaho Code sections 19-4901(a)(6) and 19-2719, which together "authorize[] a limited actual-innocence claim based upon fingerprint or forensic DNA test results that establish innocence" in capital post-conviction proceedings. 151 Idaho at 21–22, 253 P.3d at 695–96. We explained in *Fields* that the district court, in dismissing the claim, evaluated the evidence under the legal standard established by *Schlup* and its progeny:

> In its analysis, the district court began by stating, "When an innocence claim arises from new, reliable evidence, 'holistic judgment about "all the evidence" ' is required." (Quoting from [*House*, 547 U.S. at 540].) The court then stated, "The United States Supreme Court has ruled that when considering a claim of innocence based on newly discovered evidence, the court should examine whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond

10

a reasonable doubt.' " (Quoting from [*Schlup*, 513 U.S. at 327].) The court held, "After examining all the admissible evidence in this case, this [c]ourt concludes that it is not 'more probable than not' that [Fields] is not guilty of the crime for which he has been convicted."

151 Idaho at 21, 253 P.3d at 695.

We further explained that "[t]he Supreme Court in *Schlup* . . . was addressing the showing required for a federal habeas petitioner to avoid a procedural bar to the consideration of his constitutional claims." *Id.* at 22, 253 P.3d at 696. However, "[t]he [Supreme] Court was not setting forth a requirement applicable to state claims for post-conviction relief. [*Schlup* has no] application to these [post-conviction] proceedings, and the district court erred in relying upon [this authority]." *Id.* We held that the correct standard in addressing the merits of the petitioner's timely claim was whether he had "present[ed] evidence establishing a prima facie case as to each element of the claim[]" so as to avoid summary dismissal. *Id.* at 24, 253 P.3d at 698.

In *Hooley*, we concluded that the "*Schlup* gateway" was not available to post-conviction petitioners outside the one-year statute of limitations in a non-capital case, brought under Idaho Code section 19-4902. *Id.* at 914–16, 537 P.3d at 1275–77. We explained that this was not a question of constitutional rights or the writ of habeas corpus; instead, the question concerned Idaho's statutory post-conviction scheme:

> The question presented is whether Idaho's *statutory* post-conviction scheme (Idaho Code sections 19-4901-4911) should be modified by judicial fiat to include a tolling mechanism for claims of actual innocence under the statute. This is not a question of constitutional rights, or the great writ—indeed, nowhere in either Hooley's briefing below or in the district court's decision is the writ of habeas corpus mentioned.

*Id.* at 914–15, 537 P.3d at 1275–76 (emphasis in original). Beyond this Court's holding in *Fields*, we explained that "[t]he right to post-conviction relief is proscribed by what the statute provides; we are not in the business of rewriting statutes." *Id.* at 915, 537 P.3d at 1276 (citing *State v. Doe* (*In re Doe*), 147 Idaho 326, 329, 208 P.3d 730, 733 (2009)). "Thus, *Schlup* is inapplicable here, and [defendants are] bound by the statutory proscription of Idaho's post-conviction statute, as it is written." *Id.* After recognizing there is a statutory exception for new DNA and fingerprint evidence, this Court concluded, "[a]t bottom, we simply will not extend Idaho's statutes of limitation to a ground (actual innocence based on evidence other than DNA or fingerprints) that the legislature has not adopted." *Id.*

11

Abdullah contends that "[r]ecent developments justify reconsideration of *Hooley* and *Fields*." He argues that our decision in *Creech I*—which held that *Shinn* does not provide a "triggering event" that provides a new opportunity to seek post-conviction relief under section 19-2719—would deprive prisoners of any state or federal judicial remedy for claims that are defaulted by post-conviction counsel's deficient performance and through no personal fault of the prisoner. This, Abdullah contends, "enhances the risk of wrongful executions in Idaho, in comparison to the level of risk that operated at the time that *Fields* and *Hooley* were decided." In response, the State contends that Abdullah failed to articulate our stare decisis standard or explain how he met his burden under that standard. The State further argues that Abdullah misconstrued our holding in *Creech I*, and notes that Abdullah may press his innocence claim in the federal courts in order to excuse any procedural default and obtain review of his claims on the merits.

"Stare decisis provides that today's Court should stand by yesterday's decisions." *State v. Ortiz*, 175 Idaho 94, ___, 562 P.3d 450, 454–55 (2025) (alteration omitted) (quoting *Planned Parenthood Great Nw. v. State*, 172 Idaho 321, 326, 532 P.3d 801, 806 (2022)). "[T]his Court follows 'controlling precedent unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice.'" *Id.* at ___, 562 P.3d at 455 (quoting *State v. Godwin*, 164 Idaho 903, 920, 436 P.3d 1252, 1269 (2019)). The party seeking to overrule precedent bears the burden "to set forth arguments that the prior precedent should be overruled according to the standard set forth above." *Id.* (citing *State v. Watts*, 142 Idaho 230, 232–33, 127 P.3d 133, 135–36 (2005)). We agree with the State that Abdullah has not met his burden.

In *Creech I*, we rejected a capital defendant's argument that *Shinn v. Ramirez*, 596 U.S. 366 (2022), was "a triggering event that offers a new opportunity to seek postconviction relief in state court." 173 Idaho at 468, 543 P.3d at 498. We noted that the Supreme Court in

> *Shinn* interpreted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), *see* 28 U.S.C. section 2254(e)(2), to prohibit a federal habeas court from conducting an evidentiary hearing or otherwise considering evidence beyond what was produced in state court based on ineffective assistance of state post-conviction counsel.

173 Idaho at 468, 543 P.3d at 498 (citing *Shinn*, 596 U.S. at 382). However, "*Shinn* did not adopt a new or broadened interpretation of the United States Constitution that binds state courts . . . ." *Id.* (citations omitted). We further explained that "*Shinn* did not . . . 'weld off' [Creech's] opportunity to develop the facts of his case in federal court[,]" noting that Creech had "asserted

his [ineffective assistance of counsel] claim in numerous state and federal courts at nearly every stage of his four decades of litigation." *Id.* at 468–69, 543 P.3d at 498–99.

Abdullah contends that "*Creech I* counsels a different result" in this case because he never had a federal evidentiary hearing to address the claims raised in his petitions for post-conviction relief and, therefore, he lacks the opportunity to support his claims that were defaulted by post-conviction counsel's deficient performance. This argument is without merit. As we have recently noted in *Row v. State*, ___ Idaho ___, ___, 575 P.3d 887, 894 (2025), "*Shinn* still allows for factual development to occur in federal court when the petitioner shows that the claim relies on a new retroactive constitutional rule or that the petitioner exercised due diligence and is advancing a compelling theory of actual innocence." *Id*. at ___ n.5, 575 P.3d at 896 n.5 (first citing Shinn, 596 U.S. 366; then citing Row v. Miller, No. 1:98-cv-00240-BLW, 2023 WL 2744409, at *12–21 (D. Idaho Mar. 31, 2023); and then citing 28 U.S.C. § 2254(e)(2)). It may be true that Abdullah will not be able to pursue factual development in federal court of procedurally defaulted claims concerning ineffective assistance of *post-conviction* counsel. *See Shinn*, 596 U.S. at 382–83. However, he will be able to pursue factual development of state-defaulted claims of ineffective assistance from his *trial* counsel. *See id.* (stating that, if "counsel provides 'constitutionally ineffective' assistance," then a prisoner does not "bear[] the risk" for counsel's errors (citation omitted)); *see also Davila v. Davis*, 582 U.S. 521, 528 (2017) ("An error amounting to constitutionally ineffective assistance is 'imputed to the State' and is therefore external to the prisoner." (citation omitted)).

Abdullah contends that "this Court should not cede its proper adjudicatory role to" the federal courts, because states "possess primary authority for defining and enforcing the criminal law and for adjudicating constitutional challenges to state convictions." However, as in *Hooley*, the question presented is whether Idaho's *statutory* post-conviction scheme should be modified by judicial fiat; it does not concern constitutional rights or the writ of habeas corpus.[2] As we explained in *Row*, "[t]he United States Supreme Court has repeatedly held that criminal defendants do not have a constitutional right to collaterally attack a final judgment of conviction in the first instance." ___ Idaho at ___, 575 P.3d at 898 (first citing *Pennsylvania v. Finley*, 481 U.S. 551, 558 (1987);

---

[2] While Abdullah's brief made passing reference to various provisions of the Idaho Constitution, these references were not accompanied by cogent argument. "[I]f the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010).

then citing *Murray v. Giarratano*, 492 U.S. 1, 10 (1989); *United States v. MacCollom*, 426 U.S. 317, 323 (1976)). "However, if a state chooses to offer the avenue of post-conviction relief to criminal defendants, the state has 'substantial discretion to develop and implement [those] programs to aid prisoners seeking to secure postconviction review.'" *Id.* (alteration in original) (quoting *Finley*, 481 U.S. at 559). "The Idaho Legislature's decision to place a time limitation on the ability of capital defendants to bring those claims was well within its authority and discretion." *Id.*

Abdullah has not provided any compelling reason why this Court should reconsider its prior decisions in *Fields* and *Hooley*. As set forth above, "we are not in the business of rewriting statutes"; "[t]he right to post-conviction relief is proscribed by what the statute provides[.]" *Hooley*, 172 Idaho at 915, 537 P.3d at 1276. "Under section 19-2719, there is only one exception— and it is limited to claims that were not known and could not reasonably have been known when the first petition was filed." *Creech I*, 173 Idaho at 469, 543 P.3d at 499. Therefore, the district court did not err when it determined that Abdullah's claims were time barred under Idaho Code section 19-2719.

## B. The district court correctly concluded that Idaho Code section 19-2719 does not violate Abdullah's right to equal protection.

Abdullah argues that the district court erred by concluding that Idaho Code section 19-2719 does not violate his right to equal protection. Abdullah argues that, after *Shinn*, enforcing the time limitation of Idaho Code section 19-2719 violates his equal protection rights under the Fourteenth Amendment of the United States Constitution and Article I, section 2 of the Idaho Constitution because he is being treated differently from prisoners who were able to support with additional evidence claims that were defaulted through post-conviction counsel's ineffective assistance. He also argues that the district court erred by "requiring that [he] specifically name the Idaho prisoners who were treated more favorably than he was, that is, who were able to obtain factual development of defaulted claims before *Shinn*." The State argues that the district court correctly determined that Abdullah failed to meet his burden of establishing disparate treatment between himself and any other capital defendant in Idaho under section 19-2719.

"The majority of Idaho cases . . . state that the equal protection guarantees of the federal and Idaho Constitutions are substantially equivalent." *Alpine Vill. Co. v. City of McCall*, 154 Idaho 930, 937, 303 P.3d 617, 624 (2013) (alteration in original) (quoting *Rudeen v. Cenarrusa*, 136 Idaho 560, 568, 38 P.3d 598, 606 (2001)). "The principle underlying the equal protection clauses

14

of both the Idaho and United States Constitutions is that all persons in like circumstances should receive the same benefits and burdens of the law." *Id.* (quoting *Bon Appetit Gourmet Foods, Inc. v. State, Dep't of Emp.*, 117 Idaho 1002, 1003, 793 P.2d 675, 676 (1989)). "As a necessary corollary, no equal protection analysis is required and no violation of equal protection will be found in situations where the State has not engaged in the disparate treatment of similarly situated individuals." *Id.* (citing *Shobe v. Ada County*, 130 Idaho 580, 585–86, 944 P.2d 715, 720–21 (1997)). Thus, establishing disparate treatment of similarly situated individuals is a "threshold issue." *Id.*

In this case, Abdullah argues that section 19-2719's statute of limitation "operate[s] to deprive [him] of any forum in which to present his evidence, and [does] so for the sole reason that [he] is among those prisoners whose claims post-date *Shinn* instead of preceding it." This argument is without merit for several reasons. First, we reject the notion that *Shinn*'s modification of federal habeas proceedings under AEDPA has any relevance to the constitutionality of Idaho's statutory scheme for post-conviction relief. As this Court explained in *Creech I*, "*Shinn* has no bearing on state statutes, including Idaho Code section 19-2719 . . . ." 173 Idaho at 468, 543 P.3d at 498 (citing *Hairston v. State*, 167 Idaho 462, 465–66, 472 P.3d 44, 47–48 (2020)). Second, we reject Abdullah's claim that section 19-2719 treats prisoners whose claims pre-date or post-date *Shinn* any differently; under that statute, all capital defendants' claims for post-conviction relief in Idaho are subject to the same limitation period. Thus, Abdullah failed to establish that the State engaged in the disparate treatment of similarly situated individuals and, therefore, further equal protection analysis is unnecessary. We affirm the district court's conclusion that section 19-2719 does not violate Abdullah's right to equal protection.

## C. The district court correctly concluded that Idaho Code section 19-2719 does not violate the Idaho Constitution's separation of powers provisions.

Abdullah argues that the district court erred by concluding that Idaho Code section 19-2719 does not violate the separation of powers provisions of the Idaho Constitution by limiting the jurisdiction of the courts of Idaho to hear his claim. While he recognizes that this Court has previously rejected this position in *Stuart v. State*, 149 Idaho 35, 44–45, 232 P.3d 813, 822–23 (2010), Abdullah contends that the Court "confer[red] jurisdictional authority" to the time limits set forth in section 19-2719 in *Creech II* by holding that a district court has "no choice" but to dismiss sua sponte an untimely petition for post-conviction relief. 173 Idaho 470, 475, 543 P.3d 500, 505 (2024).

Abdullah's argument is without merit. "This Court has . . . repeatedly noted that statutes of limitation are not jurisdictional in nature." *Row*, ___ Idaho at ___, 575 P.3d at 902 (citing *Stuart*, 149 Idaho at 45, 232 P.3d at 823). Furthermore, in *Row*, we recently "reaffirm[ed] our longstanding interpretation of Idaho Code section 19-2719 as a statute of limitations, not a jurisdictional bar"; thus, it does not violate the separation of powers provisions of the Idaho Constitution. *Id.* In fairness to Abdullah, we note that *Row* was decided during the pendency of his appeal.

We stated in *Row* that:

> [I]t is properly within the power of the legislature to establish statutes of limitations, statutes of repose, create new causes of action, and otherwise modify the common law without violating separation of powers principles, [and therefore,] it necessarily follows that the legislature also has the power to limit remedies available to plaintiffs without violating the separation of powers doctrine.

*Id.* (first alteration in original) (quoting *Stuart*, 149 Idaho at 45, 232 P.3d at 823). This Court further concluded that our "holding in *Stuart* is consistent with its treatment of other statutes of limitations and its other decisions regarding the separation of powers doctrine." *Id.* "Because Idaho Code section 19-2719 is a statute of limitations rather than a jurisdictional bar . . . , Idaho Code section 19-2719(5) does not violate the Idaho Constitution's separation of powers provisions." *Id.* (citation modified). For these reasons, we decline Abdullah's invitation to overturn our prior holdings and affirm the district court's conclusion that Idaho Code section 19-2719 does not violate the Idaho Constitution's separation of powers provisions.

## V.   CONCLUSION

The district court correctly determined that Idaho law bars Abdullah from raising the claims alleged in his third successive petition for post-conviction relief after he failed to raise those claims in his initial post-conviction petition. Accordingly, we affirm the district court's summary dismissal of Abdullah's petition for post-conviction relief.

Chief Justice BEVAN and Justices BRODY, MOELLER, and BURDICK, J. Pro Tem, CONCUR.